**CARPENTER TECHNOLOGY CORP., Plaintiff,**

v.

**ARMCO, INC., Defendant.**

**Civ. A. No. 90–0740.**

United States District Court,
E.D. Pennsylvania.

June 26, 1990.

Richard C. Rizzo, Philadelphia, Pa., for plaintiff.

Arland T. Stein, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

In this action, plaintiff Carpenter Technology Corp. ("Carpenter") alleges that defendant Armco, Inc. ("Armco") breached a settlement agreement ("the settlement agreement") reached in a patent validity suit. Pursuant to the settlement agreement, Carpenter agreed to continue paying royalties to Armco under a license agreement executed in 1973. However, in the event that Armco's patent was declared invalid in litigation ("the Cyclops action") pending in the Western District of Pennsylvania between Armco and Cyclops Corporation ("Cyclops"), Armco agreed to reimburse plaintiff for all royalties paid from the date of the settlement agreement. Further, the settlement agreement provided that a settlement of the Cyclops action would entitle Carpenter to reimbursement of a portion of the royalties paid, if the Cyclops action "terminated by settlement which has the effect of according Cyclops an effective royalty rate less than or more favorable to Cyclops than the royalty rate provided for in the Armco/Carpenter License Agreement of December 31, 1973."

Carpenter maintains that the settlement of the Cyclops action afforded Cyclops an effective royalty rate less than or more favorable than the royalty rate paid by Carpenter. Because Armco denies this fact, Carpenter alleges that Armco breached the settlement agreement and seeks reimbursement from Armco of royalties paid in excess of the effective royalty rate paid by Cyclops plus interest, costs and attorney's fees.[1]

---

1. The detailed discussion of the factual background of this suit set forth in an earlier memo-

Resolution of this dispute requires the production of confidential information by Carpenter, Armco and Cyclops [2] during discovery. Therefore, all interested parties [3] agree that a protective order is necessary to safeguard the parties' confidential and proprietary information and documents. With one exception, the parties have agreed upon the terms of a protective order.[4] Specifically, Carpenter wishes to permit equal access to confidential documents and information to both in-house and outside counsel, while Armco wishes to prohibit in-house counsel from having access to confidential documents and information. *Compare* Carpenter Proposed Protective Order at ¶ 6 *with* Armco Proposed Protective Order at ¶ 6. I note that Cyclops has agreed to the form of protective order proposed by Carpenter. For the reasons stated below, I resolve this issue in favor of Carpenter. However, in-house counsel access to confidential information by Carpenter shall be restricted to L. Dale Pretz, Esquire, a Senior Staff Attorney for Carpenter.

## I.

Upon the motion of a party or by the person from whom discovery is sought and for good cause shown, the court "may make any order which justice requires to protect a party or person" so "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." *See* Fed.R.Civ.Proc. 26(c)(7). In order to accomplish this end, a court has broad discretion in fashioning appropriate protective orders. *See Ball Memorial*

*Hospital, Inc. v. Mutual Hospital Insurance, Inc.*, 784 F.2d 1325, 1346 (7th Cir. 1986).

"The exercise of the court's discretion must be guided by the liberal federal principles favoring disclosure, keeping in mind the need to safeguard confidential information transmitted within the discovery process from disclosures harmful to business interests." *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 409 (N.D.N.Y.1973). Although the disclosure of confidential information should not preclude discovery, courts have been willing to restrict the unnecessary disclosure of sensitive material. *Davis v. General Motors Corp.*, 64 F.R.D. 420, 422 (N.D.Ill.1974). Also, the Federal Circuit has recognized, in the context of an intellectual property case, that the irreparable harm that can be suffered by the disclosing party may outweigh the need for disclosure of even highly relevant information to a competitor. *See American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed.Cir.1987).

In this case, the parties have been able to agree upon a protective order which strictly limits access to confidential materials of the parties.[5] Unfortunately, the agreement does not extend to whether in-house counsel should be permitted access to confidential information. Armco's primary concern is that John R. Welty and L. Dale Pretz, Carpenter's in-house counsel responsible for this case, are involved in the day-to-day commercial affairs and competitive decision making process of Carpenter. Thus, according to Armco, these gentlemen should not have access to information applicable to the daily commercial activities of

randum and order of this Court is incorporated herein by reference. *See Carpenter Technology Corp. v. Armco, Inc.*, Civil Action No. 90–0740, slip op. at 2–5 (E.D.Pa. May 7, 1990) (available on the WESTLAW DCTU Database—1990 WL 61180).

2. While Cyclops is not a party to this action, it has agreed to cooperate with Carpenter's efforts to resolve this dispute by providing the necessary information in its possession.

3. For the sake of convenience, references to "all interested parties" or "the parties" shall include Cyclops.

4. Carpenter and Armco formerly disagreed as to which party should bear the burden of persuasion if a motion seeking to have certain documents designated non-confidential is filed. This disagreement has been resolved. *See* Armco Memorandum at 2 n. 1; Carpenter Reply Memorandum at 1 n. 2.

5. In this instance, "Highly Sensitive Confidential Information" includes information on sales, pricing, costs, profits, customers, accounting and production.

which the in-house counsel are a part. Courts have recognized the legitimacy of Armco's concern. *See, e.g., Akzo N.V. v. United States International Trade Commission,* 808 F.2d 1471, 1483 (Fed.Cir. 1986), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987) ("Obviously, where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased."); *F.T.C. v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C.Cir.1980) ("in-house counsel stand in a unique relationship to the corporation in which they are employed.... [T]heir continued employment often intimately involves them in the management and operation of the corporation of which they are a part."); *D & L Supply Co. v. United States,* 693 F.Supp. 1179, 1182 (C.I. T.1988) ("The attorneys are not in-house counsel who might be susceptible to demands of their corporate employers to violate a protective order.").

However, Carpenter correctly argues that denial of access to confidential information by in-house counsel should not be premised solely on their status as in-house counsel. *See United States Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed. Cir.1984); *Safe Flight Instrument Corp. v. Sunstrand Data Control, Inc.,* 682 F.Supp. 20, 22–23 (D.Del.1988). On the other hand, the fact that in-house counsel are bound by the rules of professional responsibility is insufficient alone to warrant granting access to confidential information of a competitor to in-house counsel. Notwithstanding the rules of professional conduct, the inadvertent use or disclosure of confidential information remains a major concern. *Allegheny Ludlum Corp. v. Nippon Steel Corp.,* Civil Action No. 89–5940 (E.D.Pa. January 25, 1990) (available on WESTLAW DCTU Database—1990 WL 6152); *see also A. Hirsch, Inc. v. United States,* 657 F.Supp. 1297, 1300 (C.I.T.1987).

■ Instead, denial of access to information should be made solely "on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S. Steel Corp.,* 730 F.2d at 1469. Stated differently, a decision of this magnitude should turn on the in-house counsel's involvement in "competitive decision making" which is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468 n. 3.

## II.

Through affidavits attached to its reply memorandum, Carpenter attempts to demonstrate that the in-house counsel it wishes to have access to confidential information are not involved in the competitive decision making of Carpenter. Therefore, according to Carpenter, there is no risk of harm to Armco. Further, Carpenter asserts that access to confidential information by these attorneys is necessary to assist outside counsel in the management of this litigation. Specifically, Carpenter claims that in-house counsel have particular expertise necessary to guide outside counsel in the proper preparation of the case and to provide in-house counsel with information necessary to assess the desirability of settling this litigation. I will briefly address each individual that Carpenter wishes to have access to confidential information.

### A. *L. Dale Pretz, Esq.*

■ Mr. Pretz is a Senior Staff Attorney for Carpenter. He has been employed by the company for nearly ten years. During this time, he has provided Carpenter with advise and counsel on general legal and corporate matters. He is not a member of the Board of Directors. Nor is he an officer. Pretz is not related, by blood or marriage, to any officer or employee of Carpenter. He has no involvement with scientific research. Finally, his affidavit provides as follows:

I have absolutely no involvement in decisions regarding pricing of products or services sold by Carpenter, nor do I par-

ticipate in marketing decisions. I also have absolutely no involvement in decisions made by Carpenter regarding product design or production.

*See* Pretz Affidavit at ¶ 7.

Based upon this affidavit, I conclude that Pretz is not involved in the competitive decision making of Carpenter. Given the technical nature of this case, the advice of in-house counsel with specialized knowledge of the steel industry could be essential to the proper handling of this litigation by outside counsel. Therefore, I will permit Pretz to have access to confidential information under the protective order provided that he is admitted to practice before this court.[6] As such, he will be bound by the rules of professional conduct to honor the terms of the protective order. However, Carpenter shall make every effort to avoid placing Pretz in a situation which could jeopardize his ability to comply with the terms of the protective order.

Despite Armco's protestations to the contrary, *see* Armco's Reply Memorandum, Pretz's affidavit establishes that he has no involvement in decisions regarding pricing of products or services, he does not participate in marketing decisions, and he has no involvement in decisions regarding product design and development. Therefore, the risk of inadvertent disclosure or use of confidential information is less likely than Armco would have this Court believe.

B. *John R. Welty, Esq.*

■ Mr. Welty is Carpenter's Director of Law who has been employed by Carpenter since 1976 in various different legal capacities. He has no family ties, by blood or marriage, to any employee or officer of Carpenter. Although he is an officer, Assistant Secretary, of Carpenter, he is not a member of the Board of Directors. In his position with Carpenter, he has authority to initiate and settle litigation as well as execute written contracts and agreements on behalf of the corporation. He is not in-

volved in scientific research. Finally his affidavit provides as follows:

5. I have no *direct* responsibility or authority over competitive decisions. Specifically, I have no *direct* responsibility or authority over decisions regarding the pricing of products or services sold by Carpenter. Nor do I have *direct* responsibility or authority over decisions regarding product design or production.

*See* Welty Affidavit at ¶ 5 (emphasis added).

Carpenter's reply memorandum and the attached memorandum fail to explain what *non-direct* responsibility or authority Welty has over competitive decisions. From the affidavit, I must assume that Welty does has some involvement, albeit probably small, with competitive decisions. If he has no such involvement, then I can only assume that his affidavit would have been drafted in a vein similar to that of Pretz. *Compare* Welty Affidavit at ¶ 5 *with* Pretz Affidavit at ¶ 7. Also, unlike Pretz, Welty does occupy the position of an officer with the corporation. Finally, Welty is apparently involved in contract negotiations which could involve competitive decision making.

Upon the absence of a complete explanation of the extent of Welty's involvement in competitive decisions, I shall not permit him to have access to confidential information under the protective order. Carpenter has failed to satisfactorily explain why both Welty and Pretz must have access to confidential information. In fact, granting two persons access to such information, increases the risk of inadvertent disclosure of sensitive materials. My decision denying Welty access to confidential information is, in part, guided by the fact that Pretz will have access to such information and will be able to advise outside counsel concerning technical matters and guide outside counsel throughout the course of this litigation. Pretz, a senior staff attorney, has been with the corporation for nearly ten years. He will be able to advise (with-

6. If they wish, Armco and Cyclops may designate a similarly situated individual to have access to confidential information. The identity of such persons should be discussed and resolved by the parties.

out divulging confidential information) Welty, the individual with authority to settle litigation, on the strengths and weaknesses of Carpenter's case and the desirability of pursuing settlement. Finally, should Carpenter determine in the future that Welty must have access to certain information for some limited purpose, Carpenter could seek the consent of the parties to such access or, as a last resort, seek court approval for such access.

### III.

For the reasons stated above, Carpenter's motion for a protective order is granted in part and denied in part. Carpenter's in-house counsel, specifically L. Dale Pretz, Esq., shall be permitted access to confidential information and documents under the protective order as agreed by the parties. Absent an agreement of the parties or further order of this Court, John R. Welty, Esq., Director of Law and Assistant Secretary for Carpenter, shall not be permitted access to confidential information and documents under the protective order.