**DIGITAL EQUIPMENT CORPORATION,**
Plaintiff,

v.

**MICRO TECHNOLOGY, INC., Defendant.**

Civ. A. No. 91–M–1042.

United States District Court,
D. Colorado.

July 1, 1992.

Raymond J. Turner, Sherman & Howard, Denver Colo., Robert T. Tobin, Robert F. Perry, J. Paul McGrath, Dewey Ballentine, New York City, for Digital Equipment Co.

Peter Edwards, Rothberger, Appel, Powers & Johnson, Denver, Colo., Morgan Chu, Trell & Manella, Los Angeles, Cal., for Micro Technology, Inc.

## MEMORANDUM OPINION AND ORDER

PRINGLE, United States Magistrate Judge.

On March 18, 1992, The Honorable Richard P. Matsch entered an Order of Reference pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 602 of the Local Rules of Practice for the United States District Court for the District of Colorado referring, *inter alia,* all discovery matters in this case to a United States Magistrate Judge for resolution. On March 26, 1992, the Court entered a protective order relating to all technical or confidential material of the parties. On May 12, 1992, and pursuant to the protective order, plaintiff Digital Equipment Corporation (hereinafter "DEC") moved for an order preventing disclosure of its confidential materials to Mr. Robert Koontz, an expert designated by defendant Micro Technology (hereinafter "Micro"). On May 27, 1992, a hearing was held on the motion to prevent disclosure, and DEC was given leave to depose Mr. Koontz on matters pertinent to the motion.

On June 11, 1992, Mr. Koontz' deposition was taken. A copy of that deposition has been submitted to the Court. The Court has reviewed the briefs, supporting documentation, and the deposition of Mr. Koontz, and has considered the arguments of counsel presented at the May 27, 1992 hearing. For the reasons discussed below, the Court has determined that Mr. Koontz may inspect DEC's confidential materials provided through discovery *only* upon his agreement to relinquish any current or future position as a consultant to Micro on non-litigation matters, and upon his consent to be bound by the existing protective order.

Under Fed.R.Civ.P. 26(b)(1) there exists a presumption that all matters relevant to a pending case are freely discoverable. Fed.R.Civ.P. 26(b)(1). *See Centurion Industries, Inc. v. Warren Steurer and Assoc.,* 665 F.2d 323, 325 (10th Cir. 1981); *Genentech, Inc. v. Bowen,* 1987 WL 10500 (D.D.C. April 21, 1987). However, where a party seeks discovery of trade secret or other confidential material, the Court may limit or prohibit discovery of such material. Fed.R.Civ.P. 26(c)(7). Although there is no absolute protection for trade secrets, because of the threat of economic injury resulting from disclosure to competitors, courts have consistently afforded greater protection to technical or trade information than to ordinary business information. *Centurion Industries, Inc. v. Warren Steurer and Assoc.,* 665 F.2d at 325; *Boehringer v. Hercon Laboratories Corp.,* 18 U.S.P.Q.2d 1166, 1990 WL 160666 (D.Del.1990); *Safe Flight Corp. v. Sundstrand Data Control, Inc.,* 682 F.Supp. 20, 21–22 (D.Del.1988); *Genentech, Inc. v. Bowen, supra.* To this end, courts have broad discretion in fashioning protective

orders which accommodate the parties needs and interests. *Centurion Industries, Inc. v. Warren Steurer and Assoc.*, 665 F.2d at 326; *Carpenter Technology Corp. v. Armco, Inc.*, 132 F.R.D. 24, 26 (E.D.Penn.1990).

■ A party seeking protection for its technical or other sensitive material must demonstrate to the court that (a) the information is highly confidential commercial information or a trade secret; (b) disclosure of such material might be damaging to the producing party; and (c) the harm associated with disclosure outweighs the need for access. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary. *Centurion Industries, Inc. v. Warren Steurer and Assoc.*, 665 F.2d at 325; *Genentech, Inc. v. Bowen*, 1987 WL 10500 (*citing Centurion Industries*).

In this case, the parties stipulated that an order protecting confidential information and controlling its use was appropriate. Such a protective order was entered by the Court on March 26, 1992. This order provides, in relevant part, that disclosure of confidential information shall be limited to *"independent* experts, consultants, or translators for a party, including their support personnel, whose advice and consultation are being or will be used by such party in connection with preparation for trial, or for trial of this action, including any motions in this action...." (emphasis added.). The order is consistent with case law which limits disclosure of highly sensitive and confidential data to experts who can truly be categorized as "independent," or, in other words, those who have no employment or other association with the parties. *See Safe Flight*, 682 F.Supp. at 21–22; *Boehringer v. Hercon Laboratories Corp.*, 18 U.S.P.Q.2d 1166; *Triangle Ink and Color Co., Inc. v. Sherwin Williams Co.*, 61 F.R.D. 634 (N.D.Ill.1974); *Spartanics, Ltd. v. Dynetics Engineering Corp.*, 54 F.R.D. 524 (N.D.Ill.1972); *Genentech, Inc. v. Bowen*, 1987 WL 10500.

■ When determining whether an individual is "independent" from the receiving party, and, thus, entitled to access to pro-tected material, the Court should weigh several factors, including:

(a) The expert's position, if any, within the receiving party's business as an officer, director, shareholder or employee or having family ties to the business, *see Safe Flight*, 682 F.Supp. at 21; *Carpenter Technology*, 132 F.R.D. at 27–28;

(b) The extent of regular employment, consultation or association with the receiving party, *see Triangle Ink*, 61 F.R.D. at 637; *Spartanics*, 54 F.R.D. at 526;

(c) The expert's present involvement in the receiving party's competitive decisions, including participation in or advice related to research, design, pricing, contract negotiation, etc., *see Carpenter Technology*, 132 F.R.D. at 27;

(d) The potential for future involvement of the expert in the receiving party's competitive decisions. *Id. See also Boehringer*, 18 U.S.P.Q.2d 1166; *Safe Flight*, 682 F.Supp. at 22; and

(e) If the expert's involvement is deemed beyond the point of "independence", the individual's willingness to curtail or forego future involvement with the receiving party, *see Safe Flight*, 682 F.Supp. at 22.

■ Ultimately, the focus of the court's decision should rest on considerations of the individual's relationship to or status within the receiving party's business, the likelihood of that relationship continuing, and the feasibility of separating either the knowledge gained or the individual from future competitive endeavors. *Safe Flight*, 682 F.Supp. at 22; *Carpenter Technology*, 132 F.R.D. at 27.

■ In this case, DEC contends that Mr. Koontz does not meet the definition of an "independent expert" because (a) he has a history of working with companies that "emulate" DEC storage technology, including the SDI/STI technology involved in this litigation; (b) he is a shareholder of Micro; and (c) he acts as a consultant to Micro in connection with Micro's patent licensing activities. In response, Micro asserts that Koontz has agreed to be bound by the protective order preserving the confiden-

tiality of the materials provided to him; that there is nothing in Mr. Koontz' background which would cause one to question his honesty or integrity; and that Koontz' activities as a consultant to Micro on patent licensing and cross-licensing are unrelated to any matters involved in this litigation. Consequently, argues Micro, there is no likelihood that Mr. Koontz could utilize the information contained in DEC's confidential materials in a manner detrimental to DEC's competitive interests.

Based on the record, the Court is satisfied that Mr. Koontz' past experience with companies which manufactured DEC-compatible equipment should not disqualify him from acting as an independent expert for Micro in the instant litigation. Further, Mr. Koontz' stock ownership in Micro, which represents less than 1% of the outstanding shares, is not substantial enough to defeat his claim to independence.

On the other hand, the record clearly establishes that Mr. Koontz has substantial expertise in the area of computer technology, and has an ongoing relationship with Micro separate and apart from his consulting work in connection with this case. Once DEC's confidential and proprietary data is reviewed by Mr. Koontz, it will become part of his general acquired knowledge, which cannot be "unlearned" or utilized only on a selective basis. As one court has observed: "First, accepting that [the plaintiff's president and proposed expert] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [the defendant's] documents from those he develops from his own ideas." *Safe Flight*, 682 F.Supp. at 22.

 The evidence regarding Mr. Koontz' consulting activities with Micro is not well developed. Nevertheless, it does indicate that Koontz has been retained by Micro on an ongoing basis to aid in securing of worldwide patent cross-licensing for the company's existing and future patent portfolio. Whether Koontz is classified as an employee or a consultant is not determinative. The fact that he has a continuing

nexus to an important aspect of Micro's business precludes him from being categorized as an "independent expert" within the meaning of the protective order or under the case law. Although Mr. Koontz presently may not qualify as an independent expert, the Court concludes that he may attain such a status by relinquishing his non-litigation consulting duties for Micro and agreeing to forego such assignments in the future.

DEC's Motion for a Protective Order Preventing Disclosure of Confidential Information is GRANTED unless and until Mr. Koontz (a) relinquishes his non-litigation consulting activities for Micro and agrees not to perform such non-litigation related consulting work for Micro in the future; and (b) executes a consent to be bound by the terms and conditions of the existing protective order.