**4**

ARES–SERONO, INC., Serono Laboratories Inc., Applied Research Systems ARS Holding N.V., and Genzyme Corporation, Plaintiffs,

v.

ORGANON INTERNATIONAL B.V. and Organon, Inc., Defendants.

Civ. A. No. 92–11982–GN.

United States District Court, D. Massachusetts.

July 21, 1993.

Dale A. Malone, John P. Iwanicki, Dennis D. Allegretti, Allegretti & Witcoff, Ltd., Boston, MA, Grantland G. Drutchas, Daniel A. Boehnan, Allegretti & Witcoff, Chicago, IL, for plaintiffs.

Berj A. Terzian, Isaac Jarkosvsky, Jennifer Gordon, Scott B. Familant, Pennie & Edmonds, New York City, Alexander H. Pratt, Jr., Peabody & Arnold, Boston, MA, for defendants.

**ORDER RE: ARES–SERONO'S MOTION FOR APPROVAL OF MARTHA J. CARTER AS AN INDEPENDENT EXPERT UNDER PARAGRAPH 5 OF THE PROTECTIVE ORDER (DOCKET ENTRY # 86)**

BOWLER, United States Magistrate Judge.

On June 14, 1993, plaintiffs Ares–Serono, Inc., Serono Laboratories, Inc., Applied Research Systems ARS Holding N.V. and Gen-

zyme Corporation ("plaintiffs") filed a motion to approve Martha J. Carter ("Carter") as an independent expert within the meaning of paragraph five of the February 1, 1993 protective order (Docket Entry # 70). (Docket Entry # 86). On June 17, 1993, defendants Organon International B.V. and Organon, Inc. ("defendants") filed an opposition. (Docket Entry # 88).

On June 18, 1993, this court held a hearing and took the motion (Docket Entry # 86) under advisement.

## BACKGROUND

According to the Second Amended Complaint (Docket Entry # 17), plaintiff Applied Research Systems ARS Holding N.V. is the exclusive licensee of U.S. Patent No. 4,923,-805, issued by the United States Patent and Trademark Office on May 8, 1990. This patent involves biologically active human fertility hormone follicle stimulating hormone ("FSH") which includes alpha and beta subunits. (Docket Entry # 17, Ex. A). Plaintiffs maintain that defendants produced recombinant FSH outside the United States through the use of mammalian host cells containing expression vectors with recombinant deoxyribonucleic acid ("DNA") encoding alpha and beta subunits of FSH. (Docket Entry # 17). Plaintiffs contend that defendants' alleged importation of recombinant FSH infringes the above patent in violation of 35 U.S.C. § 271(g). (Docket Entry # 17).

Plaintiffs put forth a similar allegation of infringement with respect to U.S. Patent No. 5,156,957. Entitled "Follicle Stimulating Hormone," this patent is directed towards transforming host cells to produce recombinant FSH and producing recombinant FSH in mammalian cells using certain expression vectors. (Docket Entry # 17, Ex. B). Plaintiffs assert that defendants imported recombinant FSH for commercial purposes into the United States produced by the above method. (Docket Entry # 17).

On February 1, 1993, the parties filed a Stipulated Protective Order. (Docket Entry # 70). Paragraph five limits the exchange of confidential information to certain individuals. This select group of individuals includes not more than five "independent experts ... who are not regularly employed by or associated with a party." (Docket Entry # 70). The protective order contains an additional provision allowing one party to object to another party's designation of an independent expert prior to disclosure of confidential information. Finally, prior to viewing the confidential material, the designated expert must agree in writing to be bound by the terms of the protective order. (Docket Entry # 70).

Notwithstanding defendants' objections to Carter, plaintiffs seek court approval designating Carter as an "independent expert." They maintain that Carter's testimony is necessary in order to adequately respond to defendants' summary judgment motions (Docket Entry ## 36 & 72). (Docket Entry # 87; Tr. 29).

As represented by the parties, Carter's background and present occupation is as follows.[1] Up until January 1992, Carter was an employee of plaintiff Serono Laboratories, Inc. ("Serono"). She worked for Serono for a period of eight years and continues to hold a 401(k) pension plan with Serono. According to defendants, while at Serono Carter worked in the regulatory affairs department and assisted Serono in obtaining regulatory approval of fertility drugs and recombinant products. Defendants further represent that Serono is a direct competitor of defendants in the field of recombinant FSH.

Carter is presently employed as Vice President of Regulatory Affairs for Immulogic Pharmaceutical Corporation, a company not affiliated with either party. According to plaintiffs and with the exception of Carter's 401(k) plan, Carter does not receive any salary from Serono at the present time nor have any input into Serono's business decisions.

---

1. In the future, the parties are advised not to rely on their attorney's assertions put forth in memoranda and/or arguments made before this court. Rather, in the event the parties wish this court to rely on factual material in resolving discovery disputes, they should submit such material in the form of affidavits, excerpts of deposition testimony, interrogatories and/or other documentary papers.

(Tr. 31). Prior to retaining Carter, plaintiffs experienced "much difficulty in locating an expert." (Tr. 31). As represented by plaintiffs' counsel at the June 18, 1993 hearing, the majority of consultants in this area are outside consultants who wish to avoid creating conflicts of interest. (Tr. 31).

Defendants argue that Carter's extended employment history with Serono precludes qualification as an "independent" expert. They submit that there is a "real risk" that Carter will experience difficulty in distilling proprietary information obtained from defendants in her role as an expert from prior information received in her role as an employee of Serono. Defendants therefore infer that Carter could inadvertently breach the protective order by disclosing sensitive information derived from her role as an expert. (Docket Entry # 88). Defendants also argue that Carter's testimony is not necessary to resolve the outstanding summary judgment motions.

### DISCUSSION

■ This court enjoys ample discretion in fashioning the terms of a protective order in order to accommodate the needs and interests of the parties. *See Digital Equipment Corporation v. Micro Technology, Inc.,* 142 F.R.D. 488, 490–491 (D.Colo.1992) (motion to prevent disclosure of materials to expert designated under protective order). This court also has the inherent authority to disqualify experts in certain circumstances. *Wang Laboratories v. Toshiba Corporation,* 762 F.Supp. 1246, 1248 (E.D.Va.1991) (motion to disqualify expert in patent infringement action).

■ Although the definition of relevancy for purposes of pretrial disclosure is broad, courts often afford special protection to technological information in light of the real and serious threat of economic injury attendant with disclosure of scientific information. *See Safe Flight Instrument Corporation v.*

*Sundstrand Data Control, Inc.,* 682 F.Supp. 20, 22 (D.Del.1988) (collecting cases). Disqualification of a designated expert is not necessarily warranted, however, when the threat of disclosure of confidential information is slight.

■ In analyzing whether to approve an expert as "independent" under the terms of a protective order, this court should generally weigh the following factors: (1) the expert's position within the receiving party's business as an officer, shareholder or employee; (2) the extent of the expert's regular employment or association with the receiving party; (3) the expert's "present involvement in the receiving party's competitive decisions, including participation in or advice related to research;" (4) "the potential for future involvement of the expert in the receiving party's competitive decisions;" and (5) if the expert is not deemed independent, whether the expert is willing to "forego future involvement with the receiving party." *Digital Equipment Corporation v. Micro Technology, Inc.,* 142 F.R.D. at 491; *see also Carpenter Technology Corporation v. Armco, Inc.,* 132 F.R.D. 24, 27 (E.D.Pa.1990).[2] In light of the analogous nature of the facts in *Digital* to those in the instant dispute, this court deems the above factors useful in assessing whether to approve Carter as an "independent" expert within the meaning of the protective order.

■ Significantly, Carter no longer occupies a position at Serono. In the past, however, she was actively involved in decisions connected with securing regulatory approval for fertility drugs, according to defendants' representation. The extent of Carter's employment and association with Serono in the past is therefore considerable. The extent of her present involvement, however, is minimal. To state the obvious, she no longer participates in Serono's competitive decisions. Similarly, the possibility of future involvement with Serono is remote. Accordingly, under the analysis in *Digital,* Carter is

2. As expressed in *Carpenter,* access to confidential information turns on the individual's "actual" activity and relationship with the party. *Carpenter Technology Corporation v. Armco, Inc.,* 132 F.R.D. 24, 27 (E.D.Pa.1990). Stated otherwise, the individual's "involvement in 'competitive de-

cision making' " is material in the sense of whether the individual participates in the party's decisions made in the light of similar information regarding a competitor. *See Id.* at 27 (applying rationale to in house counsel).

properly characterized as an independent expert.

Furthermore, this court is not faced with the more common situation in which the receiving party seeks to retain a former employee of the sending party as an expert. In such circumstances, as was the case in *Wang Laboratories, Inc. v. CFR Associates, Inc.,* 125 F.R.D. 10 (D.Mass.1989), the possibility of disclosing confidential information is more pronounced.

This court also finds it material that plaintiffs underwent significant efforts to retain, albeit unsuccessfully, the services of another expert. Plaintiffs' unsuccessful efforts militate in favor of approving Carter. *Cf. Safe Flight Instrument v. Sundstrand Data Control,* 682 F.Supp. at 22 (noting that allegation that expert was uniquely qualified was speculative and that party had yet to investigate availability of outside experts); *Wang Laboratories, Inc. v. CFR Associates, Inc.,* 125 F.R.D. at 13 & n. 2 (noting that party failed to demonstrate that no other expert could provide it with similar expertise).

Finally, the language of the protective order does not expressly foreclose former employees of a party. Rather than bar employees who "have been" employed by a party, the language forecloses those individuals "regularly employed by or associated with a party."[3] (Docket Entry # 70). Carter is not regularly employed by Serono. She is a former employee of Serono. Her contact with Serono in the future appears tenuous at best. Moreover, Carter will be bound by the terms of the protective order and there is no reason to believe that she will not abide by the terms contained therein. Plaintiffs legitimately need her services in order to respond to the summary judgment motions.

### CONCLUSION

In accordance with the foregoing discussion, plaintiffs' motion for approval of Carter (Docket Entry # 86) is **ALLOWED.**

**3.** At the June 18, 1993 hearing, defendants stated that "when [they] used the word independent," they contemplated "neutral, third-party witnesses, who had no prior affiliations with either of the parties." (Tr. 16–17).