**PHILLIPS PETROLEUM COMPANY, Plaintiff,**

v.

**REXENE PRODUCTS COMPANY, Defendant.**

**Civ. A. No. 90–208–LON.**

United States District Court, D. Delaware.

Aug. 3, 1994.

44

Craig Smith, Smith Katzenstein & Furlow, Wilmington, DE, for plaintiff.

David A. Anderson, Potter, Anderson & Corroon, Wilmington, DE, for defendant.

## *ORDER*

TROSTLE, United States Magistrate Judge.

The parties have presented through letter memoranda the discovery issue of whether Rexene's Chief Executive Officer, Andrew Smith, should be added to the Protective Order in this action. Despite the parties' continued efforts, they have been unable to resolve this issue.

### Background

The original Protective Order was signed by the Honorable Joseph J. Longobardi on April 11, 1991. This Order was a result of negotiations by the parties with the understanding that documents would be produced containing confidential information within the meaning of Fed.R.Civ.P. 26(c) (D.I. 39, 56). This present litigation is part of more than eleven years of litigation involving polypropylene-related patents. The particular Protective Order in question parallels protective orders that were employed in the related litigation of *Phillips Petroleum Co. v. United States Steel Corp.*, 673 F.Supp. 1278 (D.Del. 1987), *aff'd.*, 865 F.2d 1247 (Fed.Cir.1989) and *Phillips Petroleum Co. v. Rexene Corp.*, C.A. No. H86–3241 (S.D.Tex.). During the process of this litigation, the parties have produced hundreds of thousands of confidential documents in reliance upon the Protective Order entered in this case, as well as the related litigation, with many of the documents being used in more than one case.

Throughout the time in which the present Stipulated Protective Order was negotiated, Mr. Smith was the CEO of Rexene. During those negotiations, there is no indication that Rexene ever suggested that Mr. Smith be permitted access to the confidential documents covered by the Stipulated Protective Order. However, the Chief Operating Officer, Dr. Lavon Anderson, who has served on Rexene's Board of Directors since February 26, 1990 has always been included as one of the business/technical individuals having access to the confidential information.

During the course of this litigation, Rexene entered and emerged from Chapter 11 bankruptcy proceedings and has experienced numerous organizational and personnel changes. During the same time period, Phillips also experienced personnel changes. As a result, in early 1994, both parties agreed to update the Protective Order by amending it. The remaining disagreement concerning the amendment is Phillips' refusal to agree to the addition of Rexene's CEO to the Protective Order.

The remaining liability issue in this matter is whether Rexene's license under the '851 Patent remains in effect. Therefore, the case generally does not involve confidential information in the form of proprietary scientific of technical material. Rather, the confidential documents that Phillips seeks to protect deal with business related issues, including, Phillips' licenses and related correspondence with third parties.

### Rexene's Arguments

In support of its position that Mr. Smith should be included in the Protective Order, Rexene makes the following arguments:

1. Rexene, a relatively small company, requires its legal department to report di-

rectly to its CEO, thereby requiring members of Rexene's in-house legal department to be in a position to discuss the issues of potential liability, damages and settlement with the CEO in a substantive, meaningful manner.

2. Mr. Smith, as a CEO, is the individual at Rexene ultimately responsible for making business decisions concerning this action and recommending appropriate courses of action to the Board of Directors. By restricting disclosure of information to Mr. Smith, normal attorney-client consultation between Mr. Smith and his attorneys would be severely limited.

3. Since most of the Phillips' documents relating to third-party licensees date back to the early to mid-1980's, they are "ancient history" in terms of the polypropylene business.

4. Since business people of both parties have been allowed access to the confidential information, no legitimate argument exists in not allowing Mr. Smith to be added to the list.

5. Phillips' argument that it cannot divulge confidential information to Mr. Smith due to the confidentiality agreements with third-parties is without merit because the same confidential information at issue has already been supplied to Rexene personnel currently covered by the Protective Order.

6. Any suggestion that Mr. Smith would be incapable of maintaining Phillips' information in confidence consistent with the terms of the Protective Order is unfounded and insulting.

**Phillips' Arguments**

In support of its position that the Protective Order should not be modified to include Mr. Smith, Phillips argues as follows:

1. Throughout the negotiations of the original Protective Order, Rexene never suggested that Mr. Smith be permitted access to the confidential documents so covered. Further, Rexene did not insist to include its other CEOs on previous protective orders in the other related litigations between the parties.

2. None of the stipulated protective orders in any of the actions have allowed either of the parties' chief decision makers access to any of the confidential information produced by the other. Phillips argues since they are rivals in a highly competitive market, disclosing sensitive business matters, such as production figures for certain polypropylene products, as well as information relating to competitor's costs and business activities that ultimately effect the pricing of competing polypropylene products would be inappropriate.

3. As a result of being the owner and licensor of the patent in suit, all polypropylene producers report to Phillips their quarterly production and importation figures, paying royalties on the basis of such figures. The information provided by polypropylene producers was done so with the understanding that Phillips would keep it confidential, so that the specific production, importation and royalty information from the third-party polypropylene producers is unavailable from public sources. Such disclosure to Mr. Smith has the potential of influencing pricing and production decisions and upsetting the competitive market structure.

4. Contrary to Rexene's arguments, Phillips contends that a large amount of the third-party information relates to production from the 1983 through 1994 period. Production by Phillips during this litigation has been made in reliance upon the previously entered Stipulated Protective Order.

In an attempt to compromise, Phillips made suggestions which would have allowed Mr. Smith access to certain, but not all of the confidential documents. Those suggestions were as follows:

1. To permit Mr. Smith access to any non-third-party-related documents produced by Phillips, subject to the provisions of the Stipulated Protective Order.

2. Allowing him access to certain specific confidential third-party documents on a limited basis, with Rexene identifying the specific documents to be shown to Mr. Smith, subject to the approval by Phillips' counsel.

3. Any documents marked as deposition exhibits up to the present time could be

reviewed by Mr. Smith subject to the Stipulated Protective Order.

However, Rexene rejected these proposals for the following reasons:

1. By providing Phillips with a list of documents that Rexene's attorneys wish to discuss with Mr. Smith divulges attorney assessment of the significant documents in this litigation and would be a violation of the work-product doctrine.

2. Some of the significant documents have not been marked as exhibits to depositions. In addition, the proposal does not include critical deposition testimony. By suggesting that Mr. Smith have access to marked deposition exhibits refutes Phillips' argument that such documents contain confidential information.

**Discussion**

 Although courts have discretionary authority to modify a stipulated protective order, the burden of demonstrating that an agreed protective order should be modified is on the moving party. *Omega Homes, Inc. v. Citicorp Acceptance Co.,* 656 F.Supp. 393, 403 (W.D.Va.1987); *Zenith Radio v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866, 894 (E.D.Pa.1981). Under the Protective Order in question, if a dispute arises as to the confidentiality of materials bearing such a designation, the party asserting confidentiality has the burden of proving that the material in question are within the scope of protection afforded by Fed.R.Civ.P. 26(c). In part, Rexene is making such an argument. However, in response, Phillips contends that only exceptional circumstances, that is, upon a showing of compelling need, will the protection be eliminated. In support of this argument, Phillips relies primarily upon cases in which a party requested a wholesale declassification of documents or the government, a non-party, requested access to discovery for the purpose of subsequent criminal litigation.

Further, this Court recognizes the need to afford fuller protection to technological information than what is extended to ordinary business information. *Safe Flight Instrument Corporation v. Sundstrand Data Control Inc.,* 682 F.Supp. 20, 22 (D.Del.1988). In *Safe Flight,* Plaintiff had required that its president be allowed to examine scientific documents that the defendant considered confidential. The particular individual designated was noted by the court as a "preeminent aeronautic engineer." The information sought by plaintiffs related to the research and development, production, construction and sales of the defendant's wind sheer detection system, including its incorporation into other avionic products manufactured by the defendant. In determining that plaintiff's president, as an expert, would be precluded from reviewing defendant's confidential materials, this Court noted that although such a ruling would possibly hamper the plaintiff's ability to assess the economic merits of the litigation, plaintiff should select "a non-technical officer to make such a business calculation in light of his/her review of the confidential documents, rather than an officer who is also a working scientist of the corporation." Therefore, in *Safe Flight,* the court distinguished between a business executive, who had substantial scientific expertise, reviewing trade secret information than a business executive who was not so "uniquely qualified". *Id.* However, the court did question the ability of such an individual during future years to separate information received or extrapolated from confidential documents produced in litigation from those developed from his own ideas. The clear concern in *Safe Flight* was the potential for the unconscious, but improper use of technical information by a party in the future, in spite of any protective order.

Rexene's suggestion that the information requested may not be confidential is balanced with the Court's concern regarding past production made based upon the identification of certain classes of individuals and the individuals themselves to whom disclosure would automatically be allowed. The Court also finds troublesome the fact that Mr. Smith had been CEO of Rexene during the time the original Protective Order was negotiated in 1990 and 1991 and has waited until now over three years later to request his addition to the Protective Order. There is no dispute that there is a competitive relationship between Rexene and other polypropylene manufactures whose confidential business information has been provided to Phillips under

licensing agreements, which Rexene is requesting be made available to Mr. Smith. Although Rexene contends that this business data is "ancient", information may be extrapolated and interpreted from it to reveal a business' current strategy, strength and weaknesses. Therefore, old data could be used for competitive purposes.

In this case, Rexene is requesting a wholesale disclosure of records to a particular individual whose identity, position, relationship to its Board of Directors and involvement with in-house counsel was recognized and understood at the time that the Stipulated Protective Order was entered. The allocation of the decision making authority was known then. It has not been contended that throughout these proceedings the transpired organizational and personnel charges resulted in changes in the reporting system or chain of command. The information requested to be accessible to Mr. Smith is considered confidential, the disclosure of which could cause a recognized harm, competitive disadvantage, under Rule 26(c). *Zenith,* 529 F.Supp. at 890, n. 42. Further, both parties have used and benefitted from the agreed upon Protective Order, recognizing that certain confidential or sensitive information, including commercial data, would be sought in discovery. The parties did not negotiate the terms of the Protective Order in a vacuum, and voluntarily reached their agreement to facilitate discovery, based in part upon their experiences in past related litigation. Therefore,

IT IS ORDERED that Rexene's motion to add its CEO, Andrew Smith, to the Protective Order is DENIED.