STANDARD SPACE PLATFORMS
CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–1039C.

United States Court of Federal Claims.

May 21, 1996.

David B. Newman, Jr., LaPlata, Maryland, attorney of record, for plaintiff.

Grace Karaffa, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

REGINALD W. GIBSON, Senior Judge.

**Introduction**

Pending before the court is defendant's Motion for a Protective Order, filed October 16, 1995, in response to a request for production of documents filed by plaintiff, wherein the United States seeks the entry of a proposed protective order to, *inter alia,* preserve the confidentiality of proprietary and/or technical information alleged to be contained within the responsive documents. Oral argument on said motion was heard in open court on April 29, 1996.

The underlying action to which the subject motion relates is a patent infringement suit brought by plaintiff, Standard Space Platforms Corporation, against the United States alleging that certain spacecraft produced by Spectrum Astro, Inc. for the government infringe two U.S. patents owned by plaintiff.

By its very nature, this dispute involves highly technical information, much of which its owners consider to be confidential, proprietary, and of significant value. For the reasons set forth below, the court grants the motion in part. The parties shall, as directed below, submit a *joint* proposed protective order, consistent with this decision, for the court's approval.

**Defendant's Motion for a Protective Order**

The government proffers three reasons why a protective order is necessary. First, alleges defendant, the number of documents that are responsive to plaintiff's discovery request is "astronomical," filling "twenty-three (23) five-drawer filing cabinets and twenty (20) large boxes" and further including "about 800 technical drawings." Def.'s Mot. for Protective Order (Def.'s Mot.) at 2. The government maintains that such a tremendous volume of documents would make it *unduly* burdensome for it to initially review each and every document to determine on an individualized basis whether, and to what extent, the documents contain confidential information. Second, defendant represents that the responsive documents contain unclassified technical data with military or space applications subject to export controls, *see* 10 U.S.C. § 130 (1994), requiring the entry of a protective order to preserve the restricted nature of the information. And, third, the government argues that it is required under 18 U.S.C. § 1905 (1994) to protect the proprietary information of third-party non-litigants. The responsive documents at bar, alleges defendant, contain the confidential, proprietary business and technical information of Spectrum Astro and other government contractors and subcontractors.

For all of these reasons, the United States seeks the entry of its proposed protective order pursuant to Rule 26(c). In addition to the foregoing, this proposed protective order addresses each of defendant's three concerns. Initially, all of the documents would be presumed to be confidential, and only plaintiff's attorney of record, other *outside* counsel, and support staff, as well as any *independent* expert hired by plaintiff, would be permitted to view the documents. Based on this initial review, plaintiff would be re-

quired to identify those documents it wished to photocopy or further inspect. Once the field of documents has been narrowed to those of material interest to plaintiff, under the proposed order, the government and its contractors would then designate those documents alleged to contain confidential or restricted information, and all such documents not so designated would be freely disclosable. All documents marked as confidential would be limited to those same persons qualified to perform the initial review, *i.e.,* outside counsel and staff and independent experts. Any party would be free, under the proposed order, to challenge the confidential or restricted designation of any document by appropriate motion to the court.

**Discussion**

*Confidential Commercial Information*

 Rule 26(c) of the Rules of the U.S. Court of Federal Claims (RCFC) governs the entry of protective orders, providing that:

> Upon motion by a party or by the person from whom discovery is sought ... and *for good cause shown,* the court *may* make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way....

(emphasis added). Thus, a party moving for a protective order bears the burden of establishing "good cause" in support of said motion. Where the motion for a protective order is premised on the existence of confidential information, the movant must make "a *particularized* showing that the information sought to be protected is confidential commercial information...." *Wall Indus., Inc. v. United States,* 5 Cl.Ct. 485, 487 (1984). In addition, the movant must demonstrate that disclosure of that information will result in "a clearly defined and very serious injury to its business." *United States v. Exxon*

*Corp.,* 94 F.R.D. 250, 251 (D.D.C.1981) (quoting *United States v. IBM Corp.,* 67 F.R.D. 40, 46 (S.D.N.Y.1975)). Moreover, the requisite showings must be made with specific facts, not mere conclusory allegations of confidentiality and/or business harm. *Id.; Wall Indus.,* 5 Cl.Ct. at 487.

At bar, plaintiff has no objection to the entry of an order protecting export controlled information from being exported and requiring compliance with applicable federal laws. Pl.Opp.Br. at 14. On the other hand, plaintiff strenuously objects to the entry of any order that would prevent plaintiff's president and CEO from reviewing the relevant documents and, thereby, from affirmatively assisting in the litigation. In addition, plaintiff objects to the entry of a protective order limiting the disclosure of information based on any alleged proprietary or confidential information of third parties.

At this juncture, however, it is premature for the court to decide whether the responsive documents contain proprietary or confidential information. Defendant has not yet identified which particular documents contain confidential or proprietary information or of what the alleged confidential information consists, and the court, of course, does not have any of the documents before it. Based on the foregoing law, it is clear that defendant is not, at this posture, entitled to a protective order guarding proprietary or confidential information *permanently.* All the court has before it is generalized and conclusory statements and allegations. Rather, the real issue before the court is—whether defendant is entitled to the entry of an order requiring plaintiff to first identify those documents in which it is interested before defendant must determine and assert whether any confidential or proprietary information contained therein should be protected. The statements contained in the affidavits submitted by defendant and Spectrum Astro are sufficient to establish a significant likelihood that some of the documents do contain confidential or proprietary information.[1]

---

1. Plaintiff argues that the documents in question cannot be confidential, citing to 48 C.F.R. § 227.403–72, since they do not bear appropriate restrictive markings. This point can, of course, be raised in any challenge to the confidential designation of a particular designation. *See infra.* However, without knowing what the contract specifically provided, and in view of the fact

*Initial Document Review*

■ The court may make an appropriate order when justice so requires to protect a party from "undue burden and expense." RCFC 26(c). Defendant asserts that the sheer volume of documents requested by plaintiff make it unduly burdensome and expensive for it to review all of the documents to determine whether they contain confidential information. Plaintiff does not dispute the volume of the documents or even that it would be difficult to review them for potentially confidential information. Rather, plaintiff merely argues that its president and CEO, Mr. Perkins, should be allowed to participate in any initial review of the documents by plaintiff.

An examination of plaintiff's requests for production reveals that, collectively, they are extremely broad in scope, essentially encompassing every document in the government's possession relating in any way to the spacecraft alleged to infringe plaintiff's patents. *See* Pl.'s Opp.Br. at E18–E36.[2] Given plaintiff's open-ended discovery requests, and the fact that plaintiff apparently has no objection to performing an initial review of the responsive documents for the purposes of identifying those that are of interest for further use or photocopying so long as Mr. Perkins is allowed to participate, such an "initial review" procedure would likely save time, effort, and expense, thereby furthering the "just, speedy, and inexpensive determination" of this matter. RCFC 1(a)(2). As stated by the Eleventh Circuit, "[h]istory has confirmed the tremendous saving of time effected by such an approach." *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir.1987).

Thereafter, of course, under defendant's proposed order, initially designated documents would be treated as confidential unless and until challenged successfully by plaintiff. The party asserting confidentiality would bear the same burden of showing good cause, RCFC 26(c)(7), in any such challenge. "[O]nly the burden of raising the issue of confidentiality with respect to individual documents shifts to the other party [*i.e.*, to plaintiff]." *Id.* Accordingly, under the circumstances at bar, we hold that good cause exists to require that plaintiff perform an initial review of the documents and identify those in which it is interested.

*Access by Plaintiff's President and CEO*

■ The only remaining question for decision, at this time, is whether plaintiff's president and CEO, Mr. Perkins, should be permitted full access to the information contained in the responsive documents during an initial review. Defendant argues that Mr. Perkins should be denied access to those documents because, as an officer of a competitor corporation of Spectrum Astro and as an inventor of space technology, he might (even if subconsciously) use confidential, proprietary information gained during this litigation to the competitive harm of Spectrum Astro. In response, plaintiff argues that neither it nor Mr. Perkins are competitors of Spectrum Astro because plaintiff is an inactive corporation that did business in a different market segment from Spectrum Astro, and Mr. Perkins is now a life insurance salesman.

Mr. Perkins is one of the co-inventors of the patented technology allegedly infringed by the government in this case. The patents have been assigned to the plaintiff corporation. Mr. Perkins states in his affidavit that

---

that Spectrum Astro's president has stated that many of the documents were merely *loaned* to the government, rather than acquired by the government, the court is not in a posture to rule on this issue at this time.

**2.** For example, plaintiff's request for production includes, among many others, the following requests:

REQUEST NO. 3: All documents referring to the MSTI Spacecraft subsystem or assembly.

REQUEST NO. 4: All documents referring to the conception, demonstration and/or testing of the MSTI Spacecraft.

REQUEST NO. 5: All documents referring to the engineering and manufacturing development of MSTI Spacecraft.

REQUEST NO. 6: All documents referring to hardware procurement for MSTI Spacecraft.

REQUEST NO. 7: All documents, not previously requested, referring to the design of MSTI Spacecraft.

Pl.Opp.Br. at E28.

he is "not actively involved with" Standard Space and that he is "currently employed as a commissioned life insurance and registered securities sales agent." Finally, Mr. Perkins also states that he is not presently, and has no plans for, inventing any other technology related to the spacecraft industry. Pl.'s Opp. Br. at E101–E104 (Perkins Affidavit).

Given these uncontradicted statements by Mr. Perkins, the court finds that defendant has failed to show that there is any greater risk that Mr. Perkins would misuse confidential information as compared to an aerospace or other technical expert. In fact, there may well be *less risk* because, by all appearances, he is no longer active in the aerospace field and simply sells insurance.[3] Thus, on this record, defendant has failed to show good cause why plaintiff's president should be precluded from participating in the preparation and prosecution of its case. Indeed, to deny plaintiff the right to have its own president assist in its litigation, given defendant's flimsy showing, could well border on a denial of due process. Of course, Mr. Perkins will be bound by the terms of the protective order, just like any other expert would be, and will be subject to the contempt powers of this court[4] should he violate its order.

Finally, we observe that the cases cited by defendant in support of denying Mr. Perkins access to the documents in question are clearly distinguishable on their facts from the circumstances at bar. First, in *Levine v. United States*, 226 Ct.Cl. 701, 1981 WL 21454 (1981), the Court of Claims denied plaintiff, a patent attorney, access to confidential materials based on evidence that the information was sought "for purposes other than that of [the] litigation," including "his alleged statements that he might become a competitor" of the owner(s) of the confidential materials. *Id.* at 704. At bar, in contrast, defendant has failed to produce even a scintilla of evidence

that Mr. Perkins seeks to use any confidential information for any purpose other than this litigation.

Next, in *Phillips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43 (D.Del.1994), the district court refused to add defendant's Chief Executive Officer to a negotiated protective order guarding confidential information. However, unlike the case presently before this court, there was "no dispute that there [was] a competitive relationship," and defendant corporation, as well as its CEO, both remained active in the competitive business field related to the protected discovery. *Id.* at 46. At bar, of course, plaintiff vigorously disputes that there is a competitive relationship between it and Spectrum Astro. In addition, Standard Space Platforms is now out of business, and Mr. Perkins is inactive with respect to the corporation, except, apparently, as relates to this litigation. Finally, in *Phillips*, the court found it troublesome that the CEO had waited several years from the entry of the protective order to seek access to the discovery documents. In the instant case, plaintiff has sought to assure Mr. Perkins access to the materials produced in discovery *ab initio*.

Lastly, *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20 (D.Del.1988), again involved the denial of access to confidential information to an actively serving officer (the President) of a party corporation which remained actively engaged as a direct competitor of the party opponent from whom discovery was sought. *Id.* at 21. Moreover, the president actively plied aeronautical engineering, with future research apparently planned in the relevant technical area. *Id.* at 21–22. These facts, like those of the preceding cases, are clearly distinguishable from those at bar because, as was stated above, Mr. Perkins is now em-

---

**3.** The court notes that should additional evidence (*e.g.* the length of time that Mr. Perkins has been an insurance salesman, etc.), bearing on the issue of the risk that Mr. Perkins will misuse confidential information, come to light, a motion for reconsideration or to amend the protective order may well be appropriate.

**4.** 28 U.S.C. § 2521(b) (1994) provides in pertinent part:

The United States Court of Federal Claims shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority as—

 \* \* \* \* \* \*

(3) disobedience or resistance to its lawful ... order....

**510**

ployed as an insurance salesman, has no plans for inventing spacecraft, and is not actively involved with Standard Space Platforms, which is now defunct.

**Conclusion**

In sum, the court has found good cause for the entry of a protective order requiring plaintiff to conduct an *initial review* of the responsive documents, treating them as confidential at the outset, before defendant and its contractors designate any information deemed to be confidential or proprietary. Thereafter, if challenged, the party or person asserting confidentiality shall bear the burden of establishing good cause under Rule 26(c)(7). Finally, defendant has failed to show good cause for an order preventing Mr. Perkins from viewing the documents, provided he agrees to be bound by the terms of the protective order. Therefore, defendant's motion for a protective order is hereby GRANTED in part.

Accordingly, the parties shall, within seven days of this order, *i.e.,* on or before May 28, 1996, file for approval by the court a *joint modified proposed protective order* in conformance with this decision. The integrated, modified proposed protective order shall indicate the changes which have been made from the original proposed protective order filed by defendant on October 16, 1995. Furthermore, to the extent the parties are unable to agree on any specific term, the joint proposal shall set forth both parties' proposed language (properly identified as such) within the body of the proposed protective order, duly identified as unagreed.

IT IS SO ORDERED.