Slip Op. 04-27

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN, JUDGE

|  |  |  |
|---|---|---|
| | : | |
| **BASF CORPORATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Court No. 02-00260** |
| **THE UNITED STATES,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

[Defendant's Motion for Leave to Show Confidential Documents to a Third Party [] Consultant is denied.]

Dated: March 23, 2004

*Barnes, Richardson & Colburn* (*James S. O'Kelly*, *Frederic D. Van Arnam, Jr.*, *Kevin J. Sullivan*), New York, NY, for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Acting Attorney in Charge, International Trade Field Office; *Harry A. Valetk*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for Defendant.

### OPINION

**CARMAN, Judge:** Defendant seeks leave of Court to show confidential documents to a third-party consultant in accordance with the terms of the Stipulated Protective Order granted by this Court on November 6, 2003, pursuant to Rule 26(c) of this Court. For the reasons discussed below, this Court denies Defendant's motion.

### BACKGROUND

This motion involves a discovery dispute in a case challenging the United States Bureau of Customs and Border Protection's ("Customs") denial of BASF's protest of the classification of seven entries, pursuant to 19 U.S.C. § 1514(a)(2). The imported merchandise is PIBA, also known as Puradd$^{TM}$ FD-100, "a clear, colorless, viscous liquid mixture consisting of polyisobutylene amine and several saturated hydrocarbons." *BASF Corp. v. United States,* No. 02-00260 (Ct. Int'l Trade Aug. 7, 2002) (Compl. ¶ 4); (Pl.'s Opp'n to Def.'s Mot. for Leave ("Pl.'s Opp'n") at 3.) . "The starting material for the manufacture of [PIBA] is a polyisobutylene (PIB) polymer containing an average of 25 repetitive, identical units of the monomer isobutylene. The PIB is modified in its alpha position by the addition of a single monomine group (Poly Isobutylene Amine)." (Compl. ¶ 4) Customs classified the merchandise as "a prepared additive for mineral oils, specifically as a gasoline detergent additive." (Mem. in Supp. of Def.'s Mot. ("Def.'s Mem.") at 2.) BASF alleges that Customs erred in classifying the imported merchandise as a fuel additive because PIBA must undergo a significant amount of blending and processing with other compounds before it can be used as a fuel additive. (Compl. ¶¶ 9-11.) Defendant argues that Customs properly classified the merchandise; or in the event that the merchandise is not a prepared additive as imported, it is an "unfinished prepared additive," not classifiable under Plaintiff's suggested subheading, 3902.20.50 of the Harmonized Tariff Schedule of the United States ("HTSUS"). (Def.'s Mem. at 2-3; Compl. ¶ 12.)

The parties stipulated to a protective order, which the Court granted pursuant to Rule 26(c)(7) of this Court on November 6, 2003. *BASF Corp. v. United States,* No. 02-00260 (Ct. Int'l Trade Nov. 6, 2003) (granting protective order) ("Stipulated Protective Order"). This

protective order contained the mutually agreed upon terms that would govern the use of confidential documents and commercial information disclosed in this case. (*Id.*) The parties are now engaged in discovery. On December 9, 2003, Defendant requested that BASF consent to its showing confidential documents obtained under the protective order to Dr. John M. Larkin, a third-party consultant selected by Defendant. (Def.'s Mem. at 3.) Defendant provided BASF with Dr. Larkin's resume and the confidentiality agreement executed by Dr. Larkin, indicating that he would abide by the terms of the protective order. (*Id.* at 6; Exs. B and C.) On December 17, 2003, BASF notified Defendant that it would "exercis[e] its rights under paragraph six of the protective order" to object to Defendant's sharing confidential information with Dr. Larkin. (*Id.* Ex. D; Letter from Pl.'s Counsel to Def.'s Counsel of 12/17/03, at 2.) BASF explained that, upon review of Dr. Larkin's resume, it is of the view that Dr. Larkin is not independent from BASF's competitors. (*Id.*) Dr. Larkin's resume states, in pertinent part, that he is "retained by Huntsman [a producer of a fuel additive that involves similar manufacturing processes as the imported merchandise] as a part-time consultant in [the] area of fuel additives . . . [and has] acted as a gasoline additive consultant for one other [unidentified] client company." (Def.'s Mem. Ex. B.)

Defendant has now filed a motion for leave to show Dr. Larkin confidential documents which it received from BASF under the protective order. Defendant asserts that disclosure to Dr. Larkin is consistent with the terms of the protective order. BASF opposes disclosure of the confidential information to Dr. Larkin, challenging his independence from BASF's competitors.

PARTIES' CONTENTIONS

I.     *Defendant's Contentions*

Defendant seeks leave of Court to disclose confidential information to Dr. Larkin, the third-party consultant it has selected to assist it in preparing its defense, because BASF opposes disclosure to this particular expert based on its assertions that Dr. Larkin is not independent from BASF's competitors and that BASF would be harmed by this disclosure. (Def.'s Mem. at 6.) Defendant argues that BASF has offered only "broad allegations of harm about what <u>could</u> happen if its information fell into the hands of its competitors." (*Id.* (emphasis in original).) Defendant asserts that "this Court has already examined a scenario in which an importer failed to articulate specific damages or harm that will be allegedly suffered as a result of the disclosure of confidential information to third party independent experts, and held against any restriction that would unnecessarily hamper the discovery process." (*Id.* (discussing *National Hand Tool, Corp. v. United States,* 14 Ct. Int'l Trade 490 (1990)).) Defendant contends that BASF's claims that it would suffer injury by disclosure of the confidential information to Dr. Larkin are unfounded. (*Id.* at 7.) As to BASF's concern based upon the similarities in production processes used to manufacture polyether amines ("PEA"), a product manufactured by Huntsman, and PIBA, the product manufactured by BASF, Defendant states that "Dr. Larkin has explained . . . that there is no overlap between the production of PEA . . . and PIBA . . . that would allow Huntsman to improve the production of PEA, or to alter its manufacturing processes to produce a form of PIBA that would compete with BASF in the marketplace." (*Id.*)

Defendant also highlights the fact that Dr. Larkin has signed a confidentiality agreement, in which he agreed to be bound by the terms of the protective order, and that BASF has presented

no reason why Dr. Larkin would violate the protective order. (*Id.* at 7-8.) Defendant concludes

by stating that it would be "unduly prejudiced if it is not allowed to use Dr. Larkin's impeccable

expertise in defending Customs' decision in this case [because] Dr. Larkin is a fuel additive

expert with 30 years of experience in the fuel additive industry." (*Id.* at 8.) Underscoring the

fact that Dr. Larkin is only a part-time consultant to Huntsman, Defendant asserts that it has

spent a considerable amount of time trying to find an expert with sufficient experience in the fuel

additives sub-field of the fuel industry and that it is difficult to find experts who are not

employed by or affiliated with a direct competitor of BASF. (*Id.*)

II.      *Plaintiff's Contentions*

BASF opposes disclosure of information obtained under protective order to Dr. Larkin

because Dr. Larkin is not independent of BASF's competitors. (Pl.'s Opp'n at 1.) BASF

stresses that "this is not a situation where it . . . is seeking to prevent or suppress disclosure of

material documents and information to its adversary"; rather, BASF asserts that is had produced

the confidential documents and information[1] requested by Defendant to be used consistent with

the terms of the protective order. (*Id.*) BASF adds that it does not oppose disclosure of

confidential documents and commercial information to an <u>independent</u> third-party consultant

---

[1] BASF states that the confidential documents and information that it has provided to Defendant include:
> (1) the process by which the imported product – [PIBA] - is manufactured and the ingredients that go into the manufacture of PIBA; (2) the product specifications for PIBA; (3) the identity of BASF AG's customers for PIBA; (4) the chemical composition and formula of PIBA; (5) BASF's U.S. production process for the manufacture of deposit control additive packages (DCAP) in the United States; (6) the DCAP product specifications required of BASF by its customers; and (7) the results of various industry-wide tests run on the imported PIBA showing the unsuitability of it for use as a gasoline additive in its imported condition.

(*Id.* at 3 (footnote omitted); Ex. A.)

expert or consultant. (*Id.* at 6, 12.) BASF notes that, by its terms, the protective order provides that Defendant may show the confidential documents produced to "independent, third party consultants and experts." (*Id.* at 2 & n.3 (citing Stipulated Protective Order ¶ 6.) BASF argues that Dr. Larkin, "by his own acknowledgment is a paid consultant to a direct competitor of BASF and . . . has been a past consultant to [at least one] other compan[y] that may have been, could be, or [is] BASF's competitor[]." (*Id.*) BASF asserts that it has reasonably exercised its right, as provided by the protective order, to object to Dr. Larkin's access to confidential documents and information in this case. (*Id.*) BASF submits the affidavit of Susan Gardell, BASF's Marketing Manager, Fuel Additives for NAFTA Region, to support BASF's assertion that Dr. Larkin is not independent of BASF's competitors. (*Id.* at 3-4; Ex. B, Gardell Aff.) The affidavit states that "Huntsman is a direct competitor of BASF Corp. in the gasoline additive marketplace [because] Huntsman is the main toller for [PEA, ] . . . a product that BASF also produces." (Ex. B, Gardell Aff. ¶¶ 3, 5.) The affidavit explains that, in addition to PEA being a product produced by both Huntsman and BASF, "[t]he reduction amination process used for producing PEA is the same as that used to produce [PIBA]. If Dr. Larkin were to acquire [and share with Huntsman] the BASF proprietary method for producing PIBA, . . . [then] Huntsman could use this information to refine the methods and processes by which it manufactures PEA [or] use [the information] in the manufacture of PIBA." (*Id.* ¶ 6.) The affidavit adds that Huntsman is a supplier of "products to the marketers of gasoline additive packages. These [marketers] directly compete with BASF." (*Id.* ¶ 7.) BASF notes that it does not object to Dr. Larkin's participation in this case as an advisor to Defendant. (Pl.'s Opp'n at 11.) BASF seeks only to limit Dr. Larkin's access to specific confidential documents that BASF has identified. (*Id.*; Ex. A, "BASF Confidential Info.

and Docs. Disclosed to the Gov't During Discovery in Ct. No. 02-00260.")

BASF challenges Defendant's assertion that it has to show "good cause" in objecting to Dr. Larkin's access to the confidential information. (Pl.'s Opp'n at 4.) BASF asserts that a Rule 26(c)(7) of this Court requires a showing of "good cause" when a party seeks a protective order. (*Id.* at 5.) In this case, however, a protective order has already been granted. (*Id.*) BASF asserts that, contrary to the issues in the cases cited by Defendant to support its argument, it is not attempting to prevent disclosure of confidential information or prevent Defendant from showing confidential information to any independent third-party expert. (*Id.* at 4-6.) BASF argues that the issue before the Court is the "express language of the stipulated protective order"; specifically, the use of confidential information to a manner consistent with the mutually-agreed upon terms of the order. (*Id.*)

BASF contends that, given the fact that a protective order is already in place, Defendant bears the burden of establishing that "its need to disclose BASF's confidential information and documents to Dr. Larkin is relevant and necessary to the prosecution of this case, and that this necessity outweighs the harm disclosure will cause BASF." (*Id.* at 6-7 (citing 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2043 (2d. Ed 1994) (additional citations omitted).) BASF asserts that Defendant has failed to meet this burden. (*Id.* at 7.)

BASF argues that, even if Defendant has made a proper showing of necessity, "courts have historically found that the irreparable harm that can be suffered by the disclosing party will outweigh the need to disclose confidential information to a competitor." (*Id.* at 7 (citations omitted).) BASF notes that courts have declined to permit disclosure of confidential

information to a party's competitor and to the in-house counsel of a party's competitor based on the possibility of "[i]nadvertant or accidental disclosure [which] may or may not be predictable." (*Id.* at 7-9 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984).) BASF asserts that Defendant's motion should be denied based upon the following: (1) Dr. Larkin's on-going affiliation with a BASF competitor; (2) the nature of the confidential documents and information already disclosed to Defendant; (3) Defendant's failure to establish that it will be prejudiced by Dr. Larkin being denied access to the confidential information, particularly, given that Dr. Larkin has not been identified as an expert witness; and (4) Defendant's failure to identify the specific documents that Dr. Larkin would need to review. (*Id.* at 9-15.)

## DISCUSSION

Rule 26(c) of this Court provides that the Court, "[u]pon motion by a party . . . from whom discovery is sought . . . and for good cause shown, the court may make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including . . . the following: . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." USCIT R. 26(c)(7).

Because the language of Rule 26(c)(7) of this Court and Rule 26(c)(7) of the Federal Rules of Civil Procedure is fundamentally the same, the Court may look to cases which have interpreted and applied the Federal Rules of Civil Procedure for guidance. *See Nat'l Hand Tool*, 14 Ct. Int'l Trade at 492-493 (citing *A. Hirsh, Inc. v. United States,* 657 F. Supp. 1297, 1303 n.15 (Ct. Int'l Trade 1987)); FED. R. CIV. P. 26(c)(7). It is well established that "under Rule 26(c)(7), the trial court has broad discretion to determine whether a protective order is warranted, and the

specific restrictions that should be imposed." *Nat'l Hand Tool*, 14 Ct. Int'l Trade at 492 (citation omitted); *see also*, *Dove v. Atl. Capital Corp.,* 963 F.2d 15, 19 (2d Cir. 1992). "In the exercise of its discretion, and in determining the scope of a protective order, the trial court 'must be guided by the liberal federal principles favoring disclosure, keeping in mind the need to safeguard confidential information transmitted within the discovery process from disclosures harmful to business interests.'" *Nat'l Hand Tool*, 14 Ct. Int'l Trade at 493 (citation omitted).

It is well established that the party seeking a protective order bears the burden of demonstrating the 'good cause' to support the issuance of such an order. *See id.* at 493 (quoting *Reliance Ins. Co. v. Barron's,* 428 F. Supp. 200, 202 (S.D.N.Y. 1977).). "Furthermore, when a party asserts that the discovery process will cause competitive injury because it will result in the revelation of trade secrets, the party cannot rely solely upon conclusory statements, 'but must present evidence of specific damage likely to result from disclosure.'" *Id.* (quoting *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 125 (S.D.N.Y. 1986)).

After a protective order issues, the court will balance the interests of the parties, in the event that the party in receipt of confidential information under that order seeks to utilize the information in a manner that is opposed by the producing party. *See Telular Corp. v. VOX2, Inc.*, 2001 U.S. Dist. LEXIS 7472, at *3 (N.D. Ill. 2001); *Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, 1996 U.S. Dist. LEXIS 21459, at *8 (N.D. Cal 1996); *see also,* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2043. When, as is the issue here, disclosure of confidential information to a third-party consultant is opposed by the disclosing party, this court will balance the movant's interest in selecting the consultant most beneficial to its case, considering the specific expertise

of this consultant and whether other consultants possess similar expertise, against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors. *See Telular*, 2001 U.S. Dist. LEXIS 7472, at \*3; *Advanced Semiconductor,* 1996 U.S. Dist. LEXIS 21459, at \*8.

This Court finds that Defendant has failed to establish that its need to use Dr. Larkin in preparing the defense of this case outweighs BASF's interests in keeping confidential commercial information from a competitor. This Court denies Defendant's motion for leave to show confidential documents and information to Dr. Larkin.

It is undisputed that there is a protective order in place in this case and that the language of the protective order was mutually agreed-upon by the parties. (*See* Stipulated Protective Order.) The relevant portion of the protective order states:

> Confidential Documents may be shown to third party consultants and experts, who sign a certification stating they are <u>independent of all manufacturers or vendors of competitive merchandise</u>, who are retained for the purpose of assisting in the preparation of this action on the condition that, before making disclosure, defendant must obtain an agreement in writing to be bound by the provisions of this Order (in the form of Exhibit A hereto) from such consultant, expert or other third party. Confidential Documents may be shown to third party consultants and experts who are affiliated with, employed by, or consultants to manufacturers or vendors of competitive merchandise, <u>only</u> with prior written consent of plaintiff, or upon order of the Court.

(Stipulated Protective Order ¶ 6 (first emphasis added).) It is also undisputed that the documents Defendant seeks to show Dr. Larkin are confidential and that Huntsman is a fuel additives manufacturer. (*See* Def.'s Mot. Exs. B and D; Pl.'s Opp'n Exs. A and B.) Additionally, there is no dispute that Dr. Larkin maintains a relationship with Huntsman as a retained, part-time

consultant, acting as a liaison between Huntsman's fuel additive research team and Huntsman's fuel additive customers. (Def.'s Mot. Ex. B; Pl.'s Opp'n Ex. B.) BASF contends, and Defendant does not expressly deny, that Huntsman is a direct competitor of BASF in the fuel additive market. (*See generally*, Pl.'s Opp'n at 15, Ex. B, Gardell Aff ¶ 3; Def.'s Mem. at 8.) Seemingly, Dr. Larkin will remain on retainer to Huntsman during the course of this case and thereafter.

The agreed-upon language of the protective order includes precautions intended to protect BASF from possible competitive injury. (*See* Stipulated Protective Order ¶ 6.) BASF is seeking to exercise that precaution. Accordingly, the Court will balance Defendant's interest in selecting the consultant it believes will be the most useful to its case, against BASF's interest in protecting its trade secrets and confidential information from disclosure to its competitors. *See Telular*, 2001 U.S. Dist. LEXIS 7472, at *3; *Advanced Semiconductor,* 1996 U.S. LEXIS 21459, at *8.

Defendant relies on Rule 26(c)(7) and cases addressing whether the issuance of a protective order is proper to assert that BASF is attempting to prevent disclosure of relevant confidential information and that BASF must show good cause as to why the confidential documents should not be provided to Dr. Larkin. (*See* Def.'s Mem. at 5-8.) The Court, however, finds that Defendant has not framed the issue accurately. The cases upon which Defendant relies, particularly, *National Hand Tool*, address issues involving broad prevention of disclosure of confidential information to <u>any</u> third-party consultant or expert. Specifically, the "major dispute" before the court in *National Hand Tool* "pertain[ed] to [a paragraph] of plaintiff's proposed protective order, which preclud[ed] confidential information from being shown to anyone other than counsel for the defendant, counsel's support staff, and government employees assisting counsel in the conduct of the action." *Nat'l Hand Tool*, 14 Ct. Int'l Trade at 493. In

*National Hand Tool*, the defendant's proposed protective order contained essentially identical language as paragraph six of the Stipulated Protected Order in this case. *Compare id. with* Stipulated Protective Order ¶ 6. The court in *National Hand Tool* found that the plaintiff's attempt to prevent disclosure to <u>any</u> third-party consultant or expert was based upon "broad allegations of harm, rather than a particularized showing of injury." *Id.* at 494 (internal citation and quotation marks omitted). Contrary to Defendant's reading of *National Hand Tool*, the court did not "[hold] against any restriction that would unnecessarily hamper the discovery process." (Def.'s Mem. at 6.) In fact, the court noted with approval that "the defendant has taken precautions in its proposed protective order to protect plaintiff from <u>possible</u> competitive injury," by including language that permitted free disclosure of confidential information "<u>only</u> to experts who are independent of <u>all</u> manufacturers of competitive merchandise" and language that required the plaintiff's consent prior to disclosure of information to experts who may be affiliated with plaintiff's competitors. *Nat'l Hand Tool*, 14 Ct. Int'l Trade at 494 (emphasis added). The court adopted the defendant's proposed language for the protective order, finding that the provision "with precautions, permits the disclosure of plaintiff's confidential information to third party consultants and experts." *Id.*

As an initial matter, the Court finds that Dr. Larkin is not independent from BASF's competitors. In evaluating independence, the Court will consider "the individual's relationship to or status within the receiving party's business, the likelihood of that relationship continuing, and the feasibility of separating either the knowledge gained or the individual from future competitive endeavors." *Digital Equip. Corp. v. Micro Tech., Inc.,* 142 F.R.D. 488, 491 (D. Colo. 1992). Here, Dr. Larkin maintains a relationship with Huntsman, a fuel additive

manufacturer and "a direct competitor of BASF Corp. in the gasoline additive marketplace." (Pl.'s Opp'n, Ex. B Gardell Aff. ¶ 3.)  Although Defendant notes in its memorandum that Dr. Larkin is of the view that there is insufficient overlap in the manufacturing processes of Huntsman's PEA product and BASF's PIBA product, and, therefore, his possible disclosure of information to Huntsman would not improve Huntsman's competitive position in the marketplace, the affidavit in support of BASF's opposition indicates otherwise.  (*See* Def.'s Mem. at 7; Pl.'s Opp'n Ex. B ¶¶ 6-7.)  Nothing in the papers submitted to the Court indicates that Dr. Larkin's relationship with Huntsman will end during this proceeding or anytime thereafter. *See Advanced Semiconductor*, 1996 U.S. Dist. LEXIS 21459, at \*10-\*11 (permitting disclosure to an expert who last consulted with the objecting party's competitor over four years preceding the litigation and had no existing relationship with the competitor).  While in no way trying to impugn Dr. Larkin's character or his commitment to abiding by the terms of the protective order, this Court is concerned with Dr. Larkin acquiring knowledge based upon BASF's confidential information that could be used to assist a BASF competitor at BASF's expense.  "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *A. Hirsh, Inc.*, 657 F. Supp. at 1302.   In particular, if Dr. Larkin were granted access to BASF's confidential materials, he would most likely closely study BASF's sensitive commercial information and this information would become a part of his general knowledge.  This knowledge may be inadvertently disclosed to Huntsman during the course of Dr. Larkin's on-going relationship with this BASF competitor. This Court finds that BASF could be commercially harmed by disclosure of its confidential documents and information to Dr. Larkin.

Defendant has not demonstrated that its interest in using Dr. Larkin as its third-party consultant outweighs the injury that BASF would likely suffer as a result of this disclosure. Defendant has not specified with particularity why Dr. Larkin's expertise is critical for conducting its defense. (Def.'s Mem. at 8.) Although Dr. Larkin has thirty years of extensive experience in the fuel additive industry, it is not apparent that he "possesses qualifications to be an expert witness in this case which . . . other . . . experts may not possess." *Advanced Semiconductor,* 1996 U.S. Dist. LEXIS 21459, at *8.

Given the likelihood of inadvertent disclosure of highly confidential commercial information to a direct competitor of BASF because of Dr. Larkin's on-going relationship with Huntsman and Defendant's failure to establish that its need to use Dr. Larkin outweighs BASF's interests in protecting against disclosure which will harm its commercial interests, the Court denies Defendant's motion for leave to show BASF's confidential documents to Dr. Larkin.

### CONCLUSION

Upon consideration of Defendant's Motion for Leave to Show Confidential Documents to a Third Party [] Consultant as Provided by the Terms of the November 6, 2003[,] Stipulated Protective Order and Plaintiff's Opposition to Defendant's Motion for Leave, Defendant's motion is denied.

 /s/ GREGORY W. CARMAN
Gregory W. Carman,
Judge

Dated: March 23, 2004
        New York, New York