SCR-Tech LLC v. Evonik Energy Services LLC, 2012 NCBC 43.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 16632

SCR-TECH LLC,

    Plaintiff,

    v.

EVONIK ENERGY SERVICES LLC,
EVONIK ENERGY SERVICES
GMBH, EVONIK STEAG GMBH,
HANS-ULRICH HARTENSTEIN, and
BRIGITTE HARTENSTEIN,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON
DEFENDANTS' JOINT MOTION TO
PREVENT PLAINTIFF'S
DISCLOSURE OF DEFENDANTS'
CONFIDENTIAL INFORMATION
TO PLAINTIFF'S EXPERT
JAMES E. STAUDT, PH.D., CFA**

{1}     THIS MATTER is before the court on Defendants' Joint Motion to Prevent Plaintiff's Disclosure of Defendants' Confidential Information to Plaintiff's Expert James E. Staudt, Ph.D., CFA ("Motion"), pursuant to Section 8 of the Stipulated Protective Order.  Prior to a final ruling, for the reasons stated below, the court requests Plaintiff SCR-Tech LLC ("SCR-Tech") to supplement the record by providing additional information regarding connections of James E. Staudt, Ph.D. ("Dr. Staudt") to Defendant Evonik Steag GmbH's ("Steag") competitors in the selective catalytic reduction ("SCR") services industry, including an indication of whether Dr. Staudt intends to accept future non-litigation consulting engagements in the SCR industry.  The court will then rule on the Motion.

    *King & Spalding LLP by Timothy G. Barber and Antonio E. Lewis for Plaintiff SCR-Tech LLC.*

    *Bryan Cave LLP by Mark Vasco and Benjamin F. Sidbury for Defendants STEAG Energy Services GmbH f/k/a Evonik Energy Services GmbH and STEAG GmbH f/k/a Evonik STEAG GmbH.*

    *K&L Gates LLP by Beverly A. Carroll and Daniel V. Mumford for Defendants STEAG Energy Services LLC f/k/a Evonik Energy Services LLC, Hans-Ulrich Hartenstein, and Brigitte Hartenstein.*

Gale, Judge.

# I. PROCEDURAL HISTORY

{2} On April 11, 2012, Dr. Staudt signed the Declaration and Agreement attached to the Parties' Stipulated Protective Order. SCR-Tech's counsel then notified defense counsel of SCR-Tech's intent to disclose Defendants' Confidential Information as defined by the Protective Order to Dr. Staudt. Defendants objected, contending that Dr. Staudt is employed in the same industry as the Parties and that the Stipulated Protective Order, Section 8 ("Section 8"), entitles Defendants to challenge the intended document disclosure.

{3} On May 30, 2012, Defendants filed this Motion. The Motion has been fully briefed.

# II. FACTS

{4} A more complete statement of the facts and claims of this litigation may be found in the court's July 22, 2011 Order on Defendants' Joint Motion for Summary Judgment on the Non-Existence of Trade Secrets or Confidential Information.

{5} On February 6, 2012, the court entered the Stipulated Protective Order by consent. Section 8 provides that any Party may invoke the court's assistance to resolve disputes about the disclosure of Confidential Information to "any expert with current or prior employment within the industry in which the parties compete." (Stipulated Protective Order § 8.) The Stipulated Protective Order does not define the term "industry."

{6} Dr. Staudt is the principal owner of Andover Technology Partners ("ATP"), a consulting firm that advises government agencies and private entities in the air pollution control industry, including some companies that manufacture SCR catalysts. (Aff. of James E. Staudt, Ph.D. ("Staudt Aff.") ¶¶ 1, 2, 9.) Dr. Staudt has consulted for SCR-Tech and for its former parent company, Catalytica. (Staudt Aff. ¶¶ 3, 4.) Dr. Staudt's primary clients are government agencies and neither he nor ATP plans to start a business providing SCR services. (Staudt Aff. ¶¶ 13, 14.)

## III. DISCUSSION

{7}      The Motion presents two issues: (1) whether Dr. Staudt is employed within the same "industry" within the meaning of the Protective Order; and if so, (2) whether Dr. Staudt is sufficiently independent from SCR-Tech and Steag's other competitors to be permitted access to Defendants' Confidential Information.

### A. Dr. Staudt Is Within the Same Industry as the Parties.

{8}      Defendants contend that Dr. Staudt is engaged within the same industry as the Parties because Dr. Staudt has consulted for SCR-Tech and other companies that provide SCR services. SCR-Tech contends that Dr. Staudt is not engaged within the same industry because he has never worked within the narrower SCR regeneration field.

{9}      The court concludes that, for purposes of Section 8, the "industry" is the broader SCR services industry in which SCR-Tech and Steag operate and in which Dr. Staudt is involved. Accordingly, the court also concludes that Defendants' challenge is properly made pursuant to Section 8.

{10}     The North Carolina Court of Appeals demarcated a difference between "competition" and "industry" by stating, "[w]e define 'competition' as entailing more than mutual existence in a common industry or marketplace; rather, it requires an endeavor among business entities to seek out similar commercial transactions with a similar clientele." *McKinnon v. CV Indus., Inc.*, __ N.C.App. __, __, 713 S.E.2d 495, 501 (2011). The *McKinnon* court found that the parties were in the furniture industry but were not competitors. *Id.*

{11}     According to its website, Steag provides general SCR services, including manufacturing and regenerating SCR catalysts and installing, maintaining, and managing SCR systems. http://www.steag.us/ (follow "SCR Services" hyperlink). According to the CoaLogix/SCR-Tech website, SCR-Tech offers SCR management as well, but its primary service is the SCR regeneration

technology at issue in this case. http://www.coalogix.com/ (follow "About CoaLogix" hyperlink).

{12} The court concludes that SCR regeneration is properly viewed as a subset of the broader SCR services industry. The CoaLogix/SCR-Tech website touts SCR regeneration as a "compelling economic alternative to purchasing a new catalyst," indicating that SCR catalyst regeneration services compete with SCR catalyst manufacturing services. *Id.*

{13} Dr. Staudt has provided consulting services to Steag's competitors within the SCR services industry, including BASF, Johnson Matthey, and SCR-Tech. (Staudt Aff. ¶¶ 3, 4, 6–9.) Dr. Staudt and ATP advise government agencies, energy companies, technology providers, and investors in air pollution control technology. (Staudt Aff. ¶ 1.) http://www.andovertechnology.com/home.html (follow "Clients/Case Studies" hyperlink). Consulting for government agencies comprises over half of ATP's total business. (Staudt Aff. ¶ 14.) The consulting services that Dr. Staudt and ATP provide cover a range of air pollutants. Clearly, SCR systems are not Dr. Staudt's only field of expertise or even his dominant area of expertise. http://www.andovertechnology.com/services/technology-suppliers.html.

{14} The court must now determine whether Dr. Staudt's connections to SCR-Tech and Steag's other competitors constitute a sufficiently high risk of disclosure of Defendants' Confidential Information to Steag's competitors to justify preventing SCR-Tech from disclosing Defendants' Confidential Information to him.

### B. Dr. Staudt's Independence from Steag's Competitors.

{15} North Carolina's courts have not established a standard for balancing opposing parties' interests that are impacted by the disclosure of sensitive trade information to an expert with prior or ongoing involvement with the producing party's competitors. Federal courts have addressed the issue.

{16} The United States District Court for the District of Colorado faced this issue in *Digital Equip. Corp. v. MicroTech., Inc.*, 142 F.R.D. 488, 491 (D. Col. 1992). The *Digital* court used a five-factor test to determine that, although the receiving

party's expert had consulted for the receiving party, he was sufficiently independent for the court to allow disclosure of the producing party's confidential information, subject to an agreement between the expert and the receiving party to forego all future non-litigation engagements. *Id.* The five factors included: (1) the expert's affiliation with the receiving party; (2) the extent of regular employment, consultation, or association with the receiving party; (3) present involvement in the receiving party's competitive decisions; (4) the potential for future involvement of the expert in the receiving party's competitive decisions; and (5) if the expert's involvement is deemed beyond the point of independent, the expert's willingness to curtail or forego future involvement with the receiving party. *Id.*

{17}    In *BASF Corp. v. United States*, the Court of International Trade applied the *Digital* factors when examining the expert's connections to the producing party's third-party competitor. 28 C.I.T. 414, 321 F. Supp. 2d 1373 (Ct. Int'l Trade 2004). The court concluded that the expert was not sufficiently independent from that third-party competitor. *Id.* The United States District Court for the District of South Carolina used the *Digital* factors to prevent disclosure of confidential information to the receiving party's expert based on the expert's ongoing involvement with *both* the receiving party *and* the producing party's third-party competitors. *In re: Sensormatic Elecs. Corp., v. The Tag Co. LLC*, 2008 U.S. Dist. LEXIS 5312, (D.S.C. Jan. 24, 2008).

{18}    Each of those courts examined the receiving party's expert's "independence" from the producing party's competitors. The obvious goal for a court is to balance one litigant's right to retain experts having relevant specialized knowledge with protection of the other litigant's sensitive competitive information and valuable trade secrets.

{19}    When confidential information is shared with an expert having specialized knowledge of an industry, a higher risk of disclosure necessarily exists if the expert has ongoing activities within the industry. To grant too broad of a protection for the producing party could foreclose litigants from retaining experts of sufficient expertise. To grant too narrow a protection, on the other hand, would

unnecessarily endanger the producing party's sensitive information and valuable trade secrets.

{20} The balance must be made from case to case. The mere fact that an expert has provided consulting services to a producing party's competitors should not alone generally foreclose the receiving party from retaining that expert. But, if the expert's services to a competitor constitute a dominant or significant portion of the expert's business, the risk of disclosure is heightened and may justify some agreed-to or court-imposed limitation beyond the signed undertakings of a protective order. In determining whether to disqualify an expert from disclosures or imposing other limitations, a court should have a record upon which it can consider all the *Digital* factors and their indications as to whether the expert is independent from *all* of the producing party's competitors.

{21} The court does not believe it currently has a record to address all five of the *Digital* factors, although the record allows an assessment of some of those factors as related to Dr. Staudt's independence from SCR-Tech.

{22} Dr. Staudt has only had limited, rather than ongoing, engagements with SCR-Tech, all of which occurred five or more years ago. Dr. Staudt provided market analyses to SCR-Tech's former parent company on two occasions, once in 2003 and again in 2006. (Staudt Aff. ¶ 3.) He also licensed SCR catalyst management software to SCR-Tech on two occasions, once in 2005 and again in 2007. (Pl.'s Resp. Br. 7.) Thus, the first and second *Digital* factors are implicated only minimally, as these engagements indicate a limited outside consultant relationship with the receiving party that ceased five years ago. Dr. Staudt does not appear to be involved with SCR-Tech's competitive decision-making, nor is there any indication that SCR-Tech and Dr. Staudt are presently engaged, and so the third *Digital* factor of present involvement in the receiving party's competitive decision-making is not implicated. Dr. Staudt would be clearly independent from SCR-Tech if he covenants to forego all future non-litigation consulting engagements with SCR-Tech related to SCR services. Such a covenant would eliminate concerns relating to the fourth and final *Digital* factors of future involvement with the

receiving party. If Dr. Staudt does not wish to make that covenant, the court will make its determination of Dr. Staudt's independence from SCR-Tech based on the present record.

{23}    There is not adequate information for the court to assess Dr. Staudt's independence from Steag's other competitors. Therefore, the court requests SCR-Tech to supplement the record with further information regarding Dr. Staudt's independence from Steag's third-party competitors, utilizing the *Digital* factors. Those competitors include Johnson Matthey, BASF, and any other company that competes with Steag in providing SCR services.

{24}    SCR-Tech should submit its supplement no later than September 5, 2012. Defendants may respond within twenty days. The court will then issue its final ruling.

IT IS SO ORDERED, this 6th day of August, 2012.