**SAFE FLIGHT INSTRUMENT CORPORATION, Plaintiff,**

v.

**SUNDSTRAND DATA CONTROL INC., Defendant.**

**Civ. A. No. 87–545–JRR.**

United States District Court, D. Delaware.

March 24, 1988.

Daniel F. Wolcott, Jr., of Potter, Anderson & Corroon, Wilmington, Del. (Edward V. Filardi, Robert Neuner, and James J. Maure, of Brumbaugh, Graves, Donohue & Raymond, New York City, of counsel), for plaintiff.

C. Waggaman Berl, Jr., Wilmington, Del. (Theodore W. Anderson, William M. Wesley, Richard A. Cederoth, and Steven P. Petersen, of Neuman, Williams, Anderson & Olson, Chicago, Ill., of counsel), for defendant.

## OPINION

ROTH, District Judge.

Plaintiff Safe Flight Instrument Corporation (Safe Flight) claims defendant Sundstrand Data Control (Sundstrand) has been and still is infringing Safe Flight's patents for wind shear detection systems. At this early stage of the litigation, Sundstrand moves this Court to enter a protective order pursuant to Federal Rule of Civil Procedure 26(c)(7) to govern discovery. Safe Flight contests the motion. At issue is not what confidential materials are to be disclosed but rather to whom such disclosures will be made. While Sundstrand would (under appropriate guidelines) restrict disclosure to counsel and approved outside experts, Safe Flight proposes that its President additionally be permitted to have access to the information disclosed. Safe Flight alternatively argues that if its President is precluded from reviewing confidential documents then Sundstrand's inside counsel should suffer the same restriction. For the reasons set forth below, the Court adopts the defendant's position, limiting disclosure to trial counsel, inside (if admitted to the Bar of this Court) and/or outside, and to approved outside experts.

The patents-in-suit, U.S. Patent Nos. 4,012,713 and 4,079,905, involve wind shear detection systems. These systems alert airplane pilots of an abrupt change of speed or direction of wind, a potential aviatic disaster. The systems employ high technology.

In its discovery requests, plaintiff seeks information related to the research and development, production, construction, and sales of defendant's wind shear detection systems, including their incorporation into other avionics equipment manufactured by defendant. The defendant wishes to guard this information as its commercial value is enhanced by its secrecy.

Nonetheless, plaintiff asks that its President, Leonard M. Greene, be allowed to examine scientific documents that Sundstrand considers confidential. Mr. Greene, founder of Safe Flight, ranks as a preeminent aeronautic engineer, having received more than sixty aeronautic patents. In support of its position, Safe Flight argues that Mr. Greene is "uniquely qualified" to assess the documents and further that Mr. Greene should be informed so that he, qua President, can make an educated business decision as to whether to pursue this litigation. Otherwise, the argument continues, plaintiff "would have to accept as a matter of blind faith its attorneys' views of the merits of its infringement claims."

Sundstrand objects to the use of Mr. Greene in addition to or in place of an outside consultant. Its concern is clear: Mr. Greene might (whether consciously or subconsciously) abuse the confidential scientific information revealed to Sundstrand's competitive disadvantage. The potential for abuse is real. Mr. Greene actively plies aeronautic engineering. The potential for competitive loss is real. Safe Flight and Sundstrand directly compete in the market for avionics equipment, and Safe Flight has expended considerable time and effort over years to develop its product.

The weight of judicial precedent does not favor Safe Flight's position. This Court

has recognized that proper safeguards should attend the disclosure of trade secrets. *United States v. Article of Drug Consisting of 30 Individually Cartoned Jars, Etc.*, 43 F.R.D. 181, 189 (D.Del.1967). Putting this theory into practice, Judge Bauer of the Federal District Court of Northern Illinois has issued protective orders in several patent decisions which mandated technical information be disclosed only to the receiving party's trial attorneys, and, with prior approval of the disclosing party and written assurances, to independent experts assisting the trial attorneys. *Spartanics, Ltd. v. Dynetics Engineering Corp.*, 54 F.R.D. 524, 172 U.S.P.Q. 458 (N.D.Ill.1972); *Triangle Ink and Color Co., Inc. v. Sherwin Williams Co.*, 61 F.R.D. 634, 181 U.S.P.Q. 438 (N.D.Ill.1974); *see also Davis v. General Motors Corp.*, 64 F.R.D. 420, 184 U.S.P.Q. 288 (N.D.Ill.1974). The same practice has been followed in Delaware courts, Federal and State. *See, e.g., Scovill Mfg. Co. v. Sunbeam Corp.*, 61 F.R.D. 598, 602, 181 U.S.P.Q. 53, 55 (D.Del. 1973) (Latchum, C.J.) (confidential information divulged only to trial counsel); *Delaware Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 127 A.2d 465, 467 (Del.Ch.1956) (Seitz, C.) (confidential information divulged only to trial counsel and one expert witness). *See also Coca–Cola Bottling Co. v. Coca–Cola Co.*, 107 F.R.D. 288, 300, 227 U.S.P.Q. 18, 27 (D.Del.1985) (Schwartz, C.J.) (court suggesting, *sua sponte*, that disclosure of defendant's secret formulae might be limited to plaintiff's trial counsel and independent experts). *See generally Natta v. Zletz*, 405 F.2d 99, 101, 160 U.S.P.Q. 175, 176–177 (7th Cir.1968) (trade secret divulged only to trial counsel), *cert. denied*, 395 U.S. 909, 89 S.Ct. 1753, 23 L.Ed.2d 223 (1969). This line of precedent implicitly recognizes that courts often afford fuller protection to technological information than that extended to ordinary business information. *United States v. Lever Brothers Co.*, 193 F.Supp. 254, 257 (S.D.N.Y.1961), *appeal dismissed*, 371 U.S. 207, 83 S.Ct. 304, 9 L.Ed.2d 269, *cert. denied*, 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962); *Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 590 (S.D.N.Y.1973) (listing patents, secret processes, and customer lists as types of information which "the courts have rather carefully protected"). Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information.

■ Applying this precedent to the instant litigation, we rule that Mr. Greene should be precluded from reviewing defendant's confidential materials. First, accepting that Mr. Greene is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from Sundstrand's documents from those he develops from his own ideas. In this regard, plaintiff has not assured the Court that Mr. Greene is willing to curtail his future research of wind shear equipment. Second, plaintiff's claim that Mr. Greene is "uniquely qualified" is speculative. Safe Flight has yet to investigate the availability of qualified outside experts. Third, while the inability of plaintiff's counsel to consult its President on the confidential materials may hamper plaintiff's ability to assess the economic merits of this litigation, the Court suggests that the plaintiff might, if necessary in the future, nominate a non-technical officer to make such a business calculation in light of his/her review of the confidential documents, rather than an officer who is also a working scientist of the corporation.

■ Plaintiff alternatively argues for symmetry: if it cannot use an in-house expert then defendant should not be able to use in-house counsel. This argument is glib. Significant differences mark the comparison of research scientist and trial attorney. The defendant has represented to this Court that its in-house counsel involved in this litigation neither conduct scientific research nor prosecute patents. These attorneys simply do not face Mr. Greene's prospect of having to distil one's own thoughts from a competitor's thoughts during the course of future aeronautic work.

In *E.I. du Pont de Nemours & Company v. Phillips Petroleum Company*, 219 U.S.P.Q. 37 (D.Del.1982) (Latchum, C.J.), this Court acquiesced to disclosure of defendant's confidential information to plaintiff's in-house experts upon the premise that plaintiff would "undoubtedly arrange [the in-house experts'] work and project assignments in such a way as to avoid the possibility" of conscious or unconscious abuse of confidential information. *Id.* at 39. Here, defendant's in-house counsel will be so segregated. In addition, counsel who are admitted to the Bar of this Court are officers of the Court and are bound by the Code of Professional Responsibility. The Federal Circuit noted these professional obligations in a recent decision in which it rejected a blanket ban on in-house counsel access to confidential materials at the bar of the Court of International Trade. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed.Cir.1984). Cf. *A. Hirsh, Inc. v. United States*, 657 F.Supp. 1297 (CIT 1982) (in-house attorney denied access to confidential information, *viz.* non-public portion of administrative record submitted to or produced by International Trade Administration and International Trade Commission, where attorney was an officer of a small family business). Accordingly, we grant access to defendant's in-house counsel who are admitted to the Bar of this Court.

The plaintiff refers to a recent decision of the Federal Circuit approving an International Trade Commission protective order that prohibited divulgence of confidential materials to in-house counsel. *Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471 (Fed.Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987). *Akzo* does not control the present litigation. First, the Federal Circuit's decision simply affirmed the International Trade Commission's protective order in light of the appellants' due process attack and did not craft a *per se* ban on divulgence of confidential materials to in-house counsel. Second, the International Trade Commission is especially conservative regarding the divulgence of confidential materials because it "is heavily dependent on the voluntary submission of information" by parties, a factor that does not enter our calculation. *Akzo,* 808 F.2d at 1483.

As this Court observed in *du Pont,* the goals of full disclosure of relevant information and reasonable protection against economic injury "are in tension and each must be fairly balanced against the other." 219 U.S.P.Q. at 38. Here, for the reasons above, we strike a balance in favor of the defendant's position. The Court will enter a protective order in this litigation which will preclude plaintiff's President from reviewing defendant's confidential documents but which will permit defendant's in-house trial counsel, who have been admitted to the Bar of this Court, to review plaintiff's confidential documents. If, at a later time, either party wishes to modify the protective order, the Court will entertain an appropriate motion.