**TAILORED LIGHTING, INC., Plaintiff,**

v.

**OSRAM SYLVANIA PRODUCTS, INC., Defendant.**

No. 04–CV–6435T.

United States District Court, W.D. New York.

May 23, 2006.

Ronald S. Kareken, Hiscock & Barclay LLP, Rochester, NY, Douglas J. Nash, John D. Cook, Hiscock & Barclay, Syracuse, NY, for Plaintiff.

Donald W. O'Brien, Jr., Woods Oviatt Gilman LLP, Rochester, NY, for Defendant.

Anbar F. Khal, David K. S. Cornwell, Donald R. Banowit, Sterne, Kessler, Goldstein & Fox P.L.L.C., Washington, DC, for Defendant and Counter Claimant.

## *DECISION & ORDER*

PAYSON, United States Magistrate Judge.

## *PRELIMINARY STATEMENT*

By order dated January 19, 2005, the above-captioned matter has been referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B). (Docket

# 16). Plaintiff Tailored Lighting, Inc. ("TLI") has filed suit against Osram Sylvania Products, Inc. ("Sylvania"), alleging infringement of one of its patents. (Docket # 1). Specifically, TLI contends that Sylvania has infringed the patent for its "Daylight Lamp," an automotive lamp that "produce[s] light substantially equivalent to daylight in color temperature and color balance." (Docket # 1 at ¶ 10). Currently before this Court is Sylvania's motion for a protective order relating to the confidentiality of certain documents requested during discovery. (Docket # 67). The following constitutes this Court's decision and order resolving that motion.

### DISCUSSION

Sylvania requests that the Court issue an order limiting the disclosure of certain proprietary and trade secret information produced during the course of this litigation to two defined classes of individuals. (Docket # 69). First, Sylvania proposes that the producing party be permitted to designate as "Confidential" "nonpublic confidential, proprietary, commercially sensitive or trade secret information" and that the disclosure of such information be restricted to counsel, outside consultants or experts and three "in-house" party representatives for use only in connection with this litigation. (Docket # 69 at ¶¶ 1, 5). Sylvania further proposes that the producing party be permitted to designate as "Highly Confidential—Counsel Only" "highly confidential material which comprises highly sensitive technical information" and that the disclosure of such information be limited to counsel and outside experts and consultants for use only in connection with this case.[1] (Docket # 69 at ¶¶ 2, 6). In other words, while "Confidential" information may be disclosed to certain party representatives, "Highly Confidential" information may not. The added protection to be afforded "Highly Confidential" material is justified, Sylvania reasons, because "[u]nfettered access to [proprietary] information by principals and employees of the requesting party puts the disclosing party at great risk of suffering a competitive injury if the proprietary information which is disclosed is used or exploited, even subconsciously, by the requesting party." (Docket # 69 at 1–2).

TLI does not dispute the need for an order of confidentiality, nor does it contest the appropriateness of a two-tiered approach. Rather, TLI objects to the proposed restriction prohibiting the disclosure of "Highly Confidential" material to all in-house party representatives, suggesting instead that disclosure be permitted to a single "business or technical person from each party." (Docket # 76 at 1). TLI explains that because it is a small company with limited resources, the complete restriction proposed by Sylvania will "needlessly drive up [TLI's] litigation costs." (Docket # 76 at 1). Its chief concern is that the proposed restriction will preclude its president, Kevin McGuire, the named inventor of the patent-in-suit, from assisting counsel on technical issues related to the infringement claim. Without McGuire's assistance, TLI will be forced to retain an outside consultant at significant expense to perform the same services McGuire could perform without cost. (Docket # 76 at 2).

█ Pursuant to the Federal Rules of Civil Procedure, a court may enter a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R.Civ.P. 26(c)(7). Rule 26, however, "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's process." *Bridge C.A.T. Scan Assoc. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir.1983). The burden is upon the moving party to demonstrate good cause for the protection sought, and the nature of the protection, if any, to be afforded "is singularly within the

---

1. The pending motion also raised an additional issue no longer before the Court: whether the parties should be precluded from using as experts current employees and consultants of two of Sylvania's direct competitors (General Electric Company and Royal Philips Electronics NV). (Docket # 69). Since oral argument, the parties have advised the Court that they have resolved that issue. (*See* Letter to Court from Donald O'Brien, Jr., Esq., dated March 10, 2006).

discretion of the district court." *Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992) (quoting *Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973)).

■ Recognizing the sensitive nature of proprietary technical information, courts generally afford more protection to it than to ordinary business information. *See Davis v. AT & T Corp.,* 1998 WL 912012, *2 (W.D.N.Y.1998) (citing *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.,* 682 F.Supp. 20, 22 (D.Del.1988)); *Maritime Cinema Service Corp. v. Movies En Route, Inc.,* 60 F.R.D. 587, 590 (S.D.N.Y.1973)). Indeed, in cases involving the disclosure of trade secrets, courts often issue protective orders limiting access to the most sensitive information to counsel and their experts. *See, e.g., Vesta Corset Co., Inc. v. Carmen Found., Inc.,* 1999 WL 13257, *3 (S.D.N.Y. 1999) (collecting cases); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.,* 682 F.Supp. at 21–22 (collecting cases)). Those orders represent judicial efforts to strike a proper balance between "the philosophy of full disclosure of relevant information and the need for reasonable protection against harmful side effects," such as the risk that disclosure will result in competitive harm. *Davis v. AT & T Corp.,* 1998 WL 912012 at *2 (quoting *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 219 U.S.P.Q. 37, 38 (D.Del.1982)). In weighing these competing interests, courts are not aided by conclusory allegations of harm "unsubstantiated by specific examples or articulated reasoning." *Id.* (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)). Rather, the moving party must demonstrate that without the requested protection, the disclosure of confidential information will result in "a clearly defined and very serious injury." *Id.* (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.,* 529 F.Supp. 866, 891 (E.D.Pa.1981)).

I agree with Sylvania that the district court's analysis of the defendant's motion for similar relief in *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.,* 682 F.Supp. 20 (D.Del.1988), provides helpful guidance. In that case, the plaintiff filed suit against the defendant for the infringement of its patent for a wind shear detection system used in airplanes. The defendant moved for a protective order restricting the disclosure of confidential documents to counsel and approved experts. The plaintiff opposed such a narrow restriction, arguing that its president, a preeminent aeronautic engineer who had received numerous patents, be permitted access to the information. According to the plaintiff, the president was uniquely qualified to evaluate the information and to determine whether to pursue the litigation. *Id.* at 21.

The court granted the defendant's proposed protective order, rejecting the plaintiff's request to permit disclosure of confidential information to its president as an expert. As the court explained, even assuming the president to be a man of "great moral fiber," the court found questionable his "human ability during future years of research to separate the applications he has extrapolated from [the defendant's] documents from those he develop[ed] from his own ideas." *Id.* at 22. The court also dismissed the plaintiff's contention that the president was uniquely qualified to assist in the litigation, noting that it had yet to investigate the availability of qualified outside experts. *Id.* In sum, the court concluded that the risk of economic injury from even non-deliberate disclosure by an individual with scientific expertise of confidential scientific information belonging to a competitor warranted the entry of the more restrictive protective order. *Id.* at 21–23. *See also Quotron Sys., Inc. v. Automatic Data Processing, Inc.,* 141 F.R.D. 37, 40 (S.D.N.Y.1992) (finding risk of "potential commercial espionage," court granted protective order prohibiting disclosure of proprietary information to plaintiff's employees; court observed that plaintiff should hire additional consultants as experts).

TLI attempts to distinguish *Safe Flight* on the grounds that, unlike the parties in that case, it does not directly compete with Sylvania. (Docket # 76). TLI asserts that it is a small, speciality lighting firm and does not manufacture automotive products; Sylvania, on the other hand, is a multi-national corporation that competes with other international corporations in the lighting business. (Docket # 76 at 3–4). While Sylvania does not

directly challenge that characterization, it emphasizes that TLI licenses the patent at issue to a company that directly competes with it in the automotive lighting marketplace. (Docket # 78 at ¶¶ 7–9). Indeed, it points out that TLI, in its discovery responses, has stated that it is working with that licensee to develop lighting products based on the patent-in-suit. (Docket # 78, Exhibit B at Interrogatory No. 12).

Although I acknowledge the factual distinction TLI seeks to draw, I find that such distinction does not justify a result different from that reached in *Safe Flight*. First, I note that TLI has not cited, nor has this Court found, any cases to suggest that the disclosure of proprietary information to an opposing patent inventor would be appropriate merely because the parties were not currently direct competitors, particularly where, as here, the inventor licenses the patent to a direct competitor. Like the court in *Safe Flight*, this Court has no reason to question the integrity of plaintiff's president and patent inventor; nonetheless, it seems unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests. Second, I am not persuaded on the record before me that the plaintiff's president is uniquely qualified over other outside experts to assist in the prosecution of this claim.

By TLI's own admission, its opposition to the requested protective order is grounded principally in a desire to minimize the substantial costs associated with retaining an outside expert. Of course, it was TLI which initiated this suit and contends that Sylvania has infringed its patent. Having done so, it seems inappropriate to permit TLI, in an effort to reduce its own costs, to demand that Sylvania now disclose its trade secrets to TLI's chief patent inventor. While the additional cost to TLI that will result from the proposed order is a relevant consideration, the burden of that cost simply does not outweigh the substantial risk of competitive injury that attends disclosure of such trade secret information to the opposing party's

president and patent inventor. *See Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. at 40 ("utilization of only one expert may be penny-wise . . . , but [p]laintiff having invoked the Court's process must be prepared to make expenditures necessary to proceed to a prompt trial of this action").

### CONCLUSION

For the foregoing reasons, this Court finds that good cause has been shown to warrant the entry of the requested protective order. Accordingly, it is my decision and order that Sylvania's motion for a protective order (**Docket # 67**) is **GRANTED**. Defendant shall provide the Court with a proposed protective order within ten days of receipt of this order.

**IT IS SO ORDERED.**