**ANDRX PHARMACEUTICALS, LLC, Plaintiff,**

v.

**GLAXOSMITHKLINE, PLC and Smith-Kline Beecham Corporation d/b/a GlaxoSmithKline, Defendants.**

**CIV. No. 05–23264.**

United States District Court,
S.D. Florida.

July 7, 2006.

Dennis Mondolino, Esq., Jason A. Lief, Esq., Kenneth Crowell, Esq., McDermott Will & Emery LLP, New York, NY, Steven E. Siff, Esq., McDermott Will & Emery LLP, Miami, FL, for defendants GlaxoSmithKline plc and SmithKline Beecham Corporation.

Eric D. Isicoff, Esq., Teresa Ragatz, Esq., Isicoff, Ragatz & Koenigsberg, Miami, FL, Brad S. Needleman, Esq., Deepro R. Mukerjee, Esq., Greenberg Traurig, LLP, New York, NY, for plaintiff.

***ORDER***

O'SULLIVAN, United States Magistrate Judge.

THIS MATTER came before the Court on an informal discovery conference held on

June 1, 2006. As directed by the Court, the plaintiff filed a memorandum in favor of allowing outside counsel access to discovery under the terms of the protective order in the case and the defendant filed its memorandum in opposition. After hearing argument and reviewing the filings, it is

ORDERED AND ADJUDGED that the plaintiff's request to include its outside counsel, Martin P. Endres, in the parties' stipulated protective order is DENIED based on the following findings and analysis.

### Background

The plaintiff, the owner of the subject patent, brought this patent infringement action against the defendant alleging that the defendant's drug, Wellbutrin XL®, infringes one or more claims of the subject patent.[1] The parties are prepared to enter into a stipulated protective order and have agreed to all terms except for one. The plaintiff has requested that Martin P. Endres, a patent attorney and partner at Hedman & Costigan, P.C., be included in the stipulated protective order as an individual who can have access to the defendant's confidential and highly confidential materials. Mr. Endres is willing to build a "Chinese Wall" between himself and the rest of his firm. Additionally, Mr. Endres is willing to agree "not to personally prosecute any patents relating to buproprion hydrochloride for any client *either during or for two years after* this litigation, including appeals." (Pl.'s Memo. at 2; Ex. A, Endres' Declaration) in his Declaration, Mr. Endres states that "if allowed by this Court, [he] also agree[s] not to advise Andrx or any other client with respect to buprarian matters for the duration of this lawsuit and for two years after a final non-appealable order has been entered in this lawsuit." (Ex. A., Endres' Decl. ¶ 9)

The defendant objects to Mr. Endres' inclusion on the grounds that the law prohibits access to confidential scientific information by a competitor's patent prosecution counsel. Neither Mr. Endres nor his partners are on the team of trial attorneys in this action. In support of its position that Mr. Endres should be excluded from the stipulated protected order, the defendant cites the following facts:

1. The Hedman & Costigan firm actually prosecuted the patent-in-suit;

2. Hedman & Costigan is involved in continuing prosecution for Andrx of applications directly related to the patent-in-suit as well as other applications that may also implicate confidential information they receive from the defendant.

3. The Hedman & Costigan firm consists in its entirety of four partners and six other lawyers.

4. Of the four partners, one prosecuted the patent-in-suit (Alan Clement) and another (Martin Endres) played a lesser role regarding the patent-in-suit. Both are involved in continuing prosecution efforts for Andrx going forward.

5. Mr. Clement, and possibly Mr. Endres, will be witnesses in this action.

6. Plaintiff is represented by two other highly competent patent litigation firms and independent technical experts are available to Andrx as well. (Def.'s Memo. at 3) Additionally, Mr. Endres has been "one of Andrx principal patent attorney's for twelve years." (*Id.*)(quoting Pl.'s Memo. at 5); (Pl.'s Memo. at 2)

The defendant asserts that the conditions that Mr. Endres proposes constitute a "carefully worded promise that Mr. Endres will not prosecute 'buproprion' patents, without saying anything about delayed/sustained-release technology (a technology that is at the core of this case) or patents related to blood plasma drug levels and testing (another technology implicated by this case)." The defendant asserts that "[i]t would be difficult for Andrx's outside patent prosecutor to avoid work on delayed/sustained-release patent applications as that technology is the core focus of Andrx's business." (Def.'s Memo. at 3–4, Ex. 1)

---

1. The subject matter of the plaintiff's patent and Wellbutrin XL® is a once daily dosage of buproprion hydrochloride. (Pl.'s Memo. at 1)

### Analysis

 The plaintiff concedes that this Court has broad discretion to prevent or limit the disclosure of confidential trade secrets. (Pl.'s Memo. at 3) Rule 26(c) of the Federal Rules of Civil Procedure provides in pertinent part that:

> for good cause shown, ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden of expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ...."

Fed.R.Civ.P. 26(c)(7). The party requesting the protective order has the burden to demonstrate good cause. *Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783, 1998 WL 1059557 (D.Nev.1998) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (1994)). The defendant has shown good cause. The defendant has spent millions of dollars of investment regarding the innovation of Wellbulrin XL®, an antidepressant sold by the defendant. The plaintiff is a competitor that is in the business of bringing "controlled-release and specialty generic drugs into the marketplace." (Def.'s Memo. at 4; Ex. 1) According to the defendant, delayed/sustained-release technology patents and patents related to blood plasma drug levels and testing are implicated in this action.

 The plaintiff relies heavily on two unpublished decisions of the Federal Circuit *In re Sibia Neurosciences, Inc.*, 1997 WL 688174 (Fed.Cir.1997), and *In re Meta Systems*, 1996 WL 755699 (Fed.Cir.1996). In *Sibia Neurosciences*, the court determined that

> denying access to [the party's] outside counsel would pose a serious and unnecessary hardship, especially because [outside counsel] had been [the party's] patent counsel for more than one year prior to the commencement of the patent action and because the testimony at the hearing before the magistrate judge reflected [outside counsel's] crucial role in the patent litigation.

*Id.* at *3. The plaintiff asserts that "[b]ecause of Mr. Endres's extensive knowledge and background in the area [of pharmaceutical patents], his involvement as a consulting attorney for the plaintiff in this case is *critical.*" (Pl.'s Memo. at 2) Unlike the party in *Sibia Neurosciences*, the plaintiff has not demonstrated why Martin Endres is so critical to its case and that another independent expert lacks the knowledge and expertise to assist the two law firms that represent plaintiff in this action. Moreover, the plaintiff has two law firms to adequately represent it in this matter.

In *Mikohn Gaming Corp.*, the court explained that

> Where parties to a lawsuit are commercial competitors, and one of them moves for protection against misuse of its confidential technical information, the court must balance the risk to the moving party of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims.

*Id.* (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992)).

> Even if the competitor's counsel acted in the best of faith and in accordance with the highest ethical standards, the question remains whether access to the moving party's confidential information would create "an unacceptable opportunity for inadvertent disclosure."

*Id.* (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed.Cir.1984)).

In *U.S. Steel Corp.*, the Federal Circuit held that counsel's status as in-house or retained counsel could not be the sole basis for denial of access to confidential technical information. The Federal Circuit explained

> Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision. Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined, as above indicated, by the facts on a counsel-by-counsel basis, and

cannot be determined solely by giving controlling weight to be classification of counsel as in-house rather than retained.

*Id.* at 1468. Involvement in "competitive decisionmaking" has served as a basis for denial of access. *Id.* n. 3. Involvement in "competitive decision-making" refers to "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* In *U.S. Steel Corp.*, the Federal Circuit held that "access should be denied or granted on the basis of each individual counsel's activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *Id.* at 1469.

Several courts have determined that advice related to patent prosecution and advice on the scope of patent claims constitute competitive decision-making. *See Chan v. Intuit, Inc.*, 218 F.R.D. 659, 661–62 (N.D.Cal.2003) (protective order required patent prosecution counsel from participating in prosecution of patent for period of two years after the conclusion of the action); *In re Papst Licensing*, 2000 WL 554219, 2000 U.S. Dist. LEXIS 6347 (E.D.La.2000) (finding patent prosecution constituted competitive decision-making and required attorney to refrain from patent prosecution for one year after the conclusion of the litigation, including appeals);*Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 WL 1196965 *2 (D.Del. 2004) ("Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision-making.") (quoting *Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 WL 16189689, *4, 1994 U.S. Dist. LEXIS 20714 *11 (D.Del.1994)).

The district court in *Dell Computer* concluded that the patent prosecution attorneys should be denied access to the defendants' highly confidential information (or, alternatively, to prohibit them from prosecuting patents in the field of LCD technology for one year after the conclusion of the action including appeals). The district court explained that

"[t]hose ... patent prosecution attorneys who, if given access, were to view [the Defendants'] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated or ethical the ... attorneys may be.

*Id.* at *3 (citing *Motorola*, 1994 WL 16189689 at *5, 1994 U.S. Dist. LEXIS at *14–*15); *see Mikohn Gaming Corp.*, 50 U.S.P.Q.2d at 1785 ("There can be no question that attorneys ... who receive confidential information and then later prosecute patents will have to distill and compartmentalize the confidential information they have gained.") *Id.* (quoting *Motorola*, 1994 WL 16189689 at *4–5, 1994 U.S. Dist. LEXIS 20714 at *13). Similarly, in *Chan*, the court explained that

the Court must consider whether counsel might inadvertently use confidential information obtained in the course of this litigation to shape advice regarding the scope of patent claims as part of the prosecution of patents for any party to this action, to the detriment of the opposing party, its competitor. If so, *then such counsel should either be denied access to confidential information or be precluded from patenting for a party.*

218 F.R.D. at 662 (emphasis added).

"Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20, 22 (D.Del. 1988). In *Safe Flight Instrument*, the court "recognized that proper safeguards should attend the disclosure of trade secrets." *Id.* (citation omitted). In *Safe Flight Instrument*, the court entered a protective order that permitted in-house trial counsel, who neither conducted scientific research nor prosecuted patents, to review the plaintiff's confidential documents but excluded the defendant's president, who was a working sci-

entist of the corporation. One of the determining factors that supported disclosure to the trial attorney was the fact that the in-house trial attorney "simply [did] not face [the president of the corporation's] prospect of having to distill one's own thoughts from a competitor's thoughts during the future aeronautic work." *Id.* The court relied on various decisions which limited the disclosure of technical information to the receiving party's trial attorneys and independent experts.

In the present case, the risk of inadvertent disclosure outweighs the plaintiff's need to have Mr. Endres assist the two law firms that represent the plaintiff in this action. The plaintiff has not shown how or why Mr. Endres is critical to the prosecution of its case. The plaintiff has offered for Mr. Endres to refrain from participating in the prosecution of patents relating to buproprion for a period of two years following the conclusion of the litigation in this matter. However, the plaintiff has not offered that Mr. Endres would refrain from the prosecution of patents for Andrx and other clients regarding delayed/sustained-release technology or blood plasma drug levels and testing for a two year period. Mr. Endres has prosecuted patents on behalf of Andrx for twelve years. The extent of his relationship with Andrx suggests that he actively participates in competitive decision-making. Mr. Endres' firm is small (i.e. four partners and six attorneys), which makes the risk of inadvertent disclosure greater under the circumstances.

An additional ground to deny Martin Endres access to the defendant's confidential and highly confidential information is the fact that he and his partner, Alan Clement, are potential witnesses based on their roles in the prosecution of the patent-in-suit. The defendant anticipates that Alan Clement and Martin Endres will be deposed and may be called as witnesses at trial.[2] (Def.'s Memo. at 13–14). Rule 615 of the Federal Rules of Civil Procedure provides for exclusion of witnesses at the request of a party. *See Perry v. Leeke,* 488 U.S. 272, 281–82, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989). The undersigned

agrees that the plaintiff's prosecution counsel should not be given access to the defendant's information that could consciously or unconsciously affect their testimony regarding the patent-in-suit, the invention covered by the patent-in-suit and how that relates to the defendant's accused product.

For all of these reasons, the plaintiff's request to allow Martin Endres access to the defendant's confidential and highly confidential information is DENIED.

---

**2.** Rule 3.7 of the Model Rule of Professional Conduct prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness except under certain circumstances that are not applicable in this action.