**McAIRLAIDS, INC., Plaintiff,**

v.

**KIMBERLY–CLARK CORPORATION, Kimberly–Clark Worldwide, Inc., and Kimberly–Clark Global Sales, LLC, Defendants.**

**No. 7:13–CV–193.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Signed March 7, 2014.

---

Frances Elizabeth B. Waller, Joshua F.P. Long, Michael John Hertz, Woods Rogers PLC, Roanoke, VA, for Plaintiff.

J. Pieter Van Es, Marc Scott Cooperman, Michael L. Krashin, Victoria R.M. Webb, Banner & Witcoff, Ltd., Chicago, IL, Kevin Philip Oddo, Leclair Ryan, A Professional Corporation, Roanoke, VA, for Defendants.

### ORDER

ROBERT S. BALLOU, United States Magistrate Judge.

The Court entered a protective order in this patent infringement case on December 17, 2013. Dkt. No. 58. The protective order was proposed by defendants Kimberly–Clark Corporation, Kimberly–Clark Worldwide, Inc., and Kimberly–Clark Global Sales, LLC ("Kimberly–Clark"), and was identical to that used by the parties in *McAirlaids, Inc. v. Kimberly–Clark Corp., et al.,* 7:12–cv–00578 (W.D.Va.), a related trademark infringement case. Plaintiff McAirlaids, Inc. ("McAirlaids") filed a Response to the Protective Order, objecting to the terms that restrict the use of information designated as confidential and attorney eyes only. Specifically, McAirlaids claims that the current Protective Order prevents its decision-makers from reviewing a majority of the discovery materials exchanged in the case and evaluating and understanding their legal position. McAirlaids proposed an alternative protective order that would allow the parties to designate two employees as "technical advisors" who can access the other party's confidential and attorney eyes only information. Kimberly–Clark objects to McAirlaids' alternative protective order, because it would permit McAirlaids' competitive decision-makers to access Kimberly–Clark's confidential information. The court held a hearing on this issue on February 25, 2014. Having considered the proposed protective orders, the parties' briefs and oral argument, and for the reasons set forth below, I find that the current Protective Order entered by the Court should not be amended.

### I.

The parties agree that a protective order should be entered in this case to protect

confidential information exchanged during discovery. The parties do not agree on how confidential information should be disseminated under the protective order; and specifically, whether McAirlaids' competitive decision-makers should be permitted to access Kimberly–Clark's information designated "confidential" and "attorney eyes only."

The current Protective Order sets forth a two tier designation for protected information as "confidential" or "attorney eyes only." Attorney eyes only information may be viewed by litigation counsel and approved independent experts and consultants. Confidential information may be accessed by litigation counsel, approved independent experts and consultants, and up to five employees of each party, so long as the employees are not involved in competitive decision-making.

McAirlaids claims that the current Protective Order prevents its decision-makers from reviewing confidential discovery in the case, assisting counsel with technical and scientific matters, and properly evaluating each party's position. McAirlaids asserts that it has only a handful of employees with technical expertise, who are also involved in competitive decision-making. Thus, McAirlaids proposes an alternative protective order that allows each party to designate two competitive decision-makers within the company as "technical advisors," who would have access to all information exchanged between the parties, including that information marked as confidential and attorney eyes only. At the hearing on this issue, McAirlaids proffered that its "technical advisors" would be McAirlaids' president, and either its owner and patent inventor, or chief operating officer. These individuals, McAirlaids readily admits, are responsible for the daily operations of the company and decisions relating to marketing and its competition in the marketplace.

McAirlaids argues that allowing such technical advisors to access Kimberly–Clark's confidential documents is necessary for its employees to make an educated business de-

cision with regard to the litigation. Kimberly–Clark strenuously objects to this proposal, due to the potential for misuse of its confidential information by McAirlaids, a direct competitor in the absorbent pad market. Meanwhile, McAirlaids asserts that any potential harm from its proposed approach is minimized because the technical advisors must sign a form agreeing not to misuse confidential or attorney eyes only information, and agree to submit to the jurisdiction of the court for enforcement of the protective order.[1]

■ The weight of judicial precedent does not favor McAirlaids' position. A party seeking a protective order carries the burden of showing good cause for its issuance. *See* Fed. R. Civ. P. 26(c); *In Re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed.Cir.2010). When issuing a protective order, the court must balance the goal of full disclosure of relevant information against reasonable protection from economic injury. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d at 1380. Courts presiding over patent cases have often crafted protective orders that address the need to limit access to protected technical information. *See Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20, 22 (D.Del.1988) (collecting cases). "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Id.*

In *United States Steel Corp. v. United States*, the Federal Circuit explained that the relevant determination for denial of access under a protective order is "[w]hether an unacceptable opportunity for inadvertent disclosure exists." 730 F.2d 1465, 1468 (Fed. Cir.1984). The court further noted that the determination often turns on the extent to which the person to whom the information is disclosed is involved in "competitive decision-making" with the client. *Id.* Thus, courts have routinely allowed disclosure of confiden-

---

1. McAirlaids' proposed order also sets forth a procedure that would allow certain limited material designated as attorney eyes only information to be withheld from the other party's "technical advisors" if disclosure of such information "will cause competitive harm if disclosed." The dis-

closing party must provide written notice of its desire to restrict the information with reasonably-detailed justification. Any unresolved disputes over these issues would be decided by the court. Dkt. No. 59–1.

tial information to in-house counsel and experts, upon the premise that those individuals are segregated from the competitive day-to-day business decisions of the company. *Id.; see also Ross–Hime Designs, Inc. v. U.S.,* 109 Fed.Cl. 725, 743–44 (Fed.Cl.2013); *Safe Flight Instrument Corp.,* 682 F.Supp. at 22–23; *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 219 U.S.P.Q. 37, 39 (D.Del.1982).

Here, McAirlaids asks the Court to allow disclosure of Kimberly–Clark's confidential information directly to its competitive decision-makers, including its president, owner and patent-holder, and chief operating officer. McAirlaids' proposal would create exactly the unacceptable opportunity for inadvertent disclosure warned against in *U.S. Steel. See Hitkansut LLC v. United States,* 111 Fed.Cl. 228, 239 (Fed.Cl.2013); *Ross–Hime Designs, Inc. v. United States,* 109 Fed.Cl. 725, 742–44 (Fed.Cl.2013); *Safe Flight Instrument Corp.,* 682 F.Supp. at 22–23; *Northbrook Digital, LLC v. Vendio Servs., Inc.,* 625 F.Supp.2d 728, 742–43 (D.Minn.2008); *R.R. Donnelley and Sons Co v. Quark, Inc.,* No. CIVA 06–032, 2007 WL 61885, at *1–3 (D.Del.2007); *Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.,* 236 F.R.D. 146, 147–48 (W.D.N.Y.2006); *cf. Medtronic Sofamor Danek, Inc. v. Michelson,* No. 01–2373–GV, 2002 WL 33003691, at *3–4 (W.D.Tenn. Jan. 30, 2002)(distinguishing *Safe Flight* and allowing defendant inventor to examine confidential technical information because he had previously served as an expert witness for plaintiff and had access to its other confidential information, and he was not in direct competition with plaintiff). McAirlaids and Kimberly–Clark are direct competitors. Thus, the potential for abuse and competitive loss in this case is real. ▇ McAirlaids asserts that the risk of misuse of Kimberly–Clark's information is minimized because its "technical advisors" would sign a form agreeing not to misuse confidential information and to submit to the jurisdiction of the court for enforcement of the protective order. However, courts have recognized that there are circumstances where "even the most rigorous efforts of the recipient of such information to preserve confidentiality" may not prevent inadvertent disclosure. *In re Deutsche Bank Trust Co.*

*Americas,* 605 F.3d at 1378. McAirlaids' "technical advisors" would not only be expected to keep Kimberly–Clark's information confidential, they would be required to separate their own thoughts and ideas from their competitors' thoughts and ideas in all future endeavors. Even accepting that McAirlaids' technical advisors would make a conscious and sustained effort to comply with the terms of the protective order, they are still subject to human fallibilities. "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C.Cir.1980); *see also Hitkansut LLC v. United States,* 111 Fed.Cl. 228, 239 (Fed.Cl.2013)("[T]he fallibility of the human brain is paramount. It is simply impossible for a human being to segregate, or 'unlearn,' certain pieces of knowledge.") The disclosure of technical information regarding the manner in which Kimberly–Clark manufactures its product, the production process and other highly confidential information cannot later be removed from the thought process of the McAirlaids competitive decision-makers as they manage the business operations of the company.

The court finds that McAirlaids' proposed protective order creates an unacceptable risk of inadvertent disclosure. The inability of McAirlaids' counsel to consult its president, owner and chief operating officer on the confidential materials shared between the parties does not create an undue or unacceptable hardship for McAirlaids significant enough to overcome the risk of disclosure of Kimberly–Clark's confidential information. McAirlaids must assess the merits of the litigation and develop strategy using litigation counsel and outside experts to review information marked confidential or attorney eyes only, and present it in a non-confidential manner to the client for decision-making purposes. This is a necessary consequence of achieving a balance between full disclosure in discovery and protection against economic injury. *See R.R. Donnelley,* No. CIVA 06032, 2007 WL 61885, at *1 (D.Del.2007)(citing *Intel Corp. v. VIA Tech., Inc.,* 198 F.R.D. 525, 528 (N.D.Ca. 2000)("The risk of inadvertent disclosure cannot be overcome by the mere contention that

access to confidential information is necessary for case management.")). McAirlaids' need to access Kimberly–Clark's competitive information does not outweigh the risk of disclosure.

Accordingly, I find that the current Protective Order strikes an appropriate balance between providing full disclosure in discovery, while protecting the parties' confidential and proprietary information, and should not be amended. It is **SO ORDERED.**